COUNTY OF NELSON, Respondent, v. NORTHCOTE ET AL., Appellants.

1. Action — Damages — Fraudulent Act — Liability.

   In order to maintain an action for a fraudulent act it is not only necessary to prove damages but it must appear that they were the necessary result of the act and such as can be clearly ascertained.

2. Same.

   Where by statute it was made the duty of the county treasurer to settle with the commissioners at stated periods, and the defendants, knowing the treasurer was a defaulter, and with the intention of concealing it and defrauding the county, loaned him funds to effect his settlement, and the commissioners being deceived, audited his accounts, continued him in office, and he afterward embezzled further funds of the county and fled the territory, held, the defendant sustained no liability to the county.

(Argued May 22, 1889; reversed May 31; opinion filed October 10, 1889.)

APPEAL from district court, Nelson county; Hon. CHAS. F. TEMPLETON, Judge.

Action for damages alleged to have been sustained by the plaintiff by reason of fraud and collusion on the part of the defendants and one Andrew Holman, county treasurer of said plaintiff, by which it is alleged the plaintiff was defrauded and sustained damage.

Demurrer was first interposed to the complaint on the ground that it did not state facts sufficient to constitute a cause of action, which was overruled. The defendants answered. Upon the trial before the court with a jury, the plaintiff had judgment, and the defendants appealed.

*Ball, Wallin & Smith,* for appellants.

*Bosard & Corliss,* for respondent.

SPENCER, J. (*After stating the facts substantially as above.*) By the complaint in this action it is alleged that the plaintiff is a municipal corporation, one of the counties of this territory; that defendants were bankers, carrying on business at Lokota, Nelson county; that one Andrew Holman was county treasurer of said county, duly elected and acting as such, and that, as such treasurer, he deposited the funds of said county received by him in defendants' bank, and kept his account therein; that on the 5th day of January, 1886, said Holman was an embezzler in the sum of $9,300 of said county's funds, which had come into his hands as such treasurer; that the defendants knew at that time that said Holman had been using said funds of said county so deposited with them for the purpose of paying his personal debts, and that he had paid his private debts from the funds of said county so deposited; that, under the statute of this territory, it was the duty of said Holman, as such treasurer, on the 5th day of January, 1886, to attend before the board of county commissioners of said county and exhibit his accounts and vouchers as such treasurer, and the, moneys in his hands belonging to such county; that on said day as such treasurer, he should have had in his hands of the moneys of said county, which he had received, and for which he was chargeable, the sum of $15,221.78; that he did not have such sum

of said funds of said county in his possession, or under his control, but that he had at such times embezzled the sum of $9,300 thereof; that upon such accounting by said Holman, as such treasurer, he exhibited to the county commissioners, among the moneys of said county, the sum of $4,200, in cash, and a certain certificate of deposit issued by said defendants to him for the sum of $2,600, and a bank draft for the sum of $2,500, issued by the defendants to him; that said $4,200 cash, and certificate of deposit, and draft were not the property of said Holman, either individually or as such treasurer, or the property of said county, but were temporarily loaned by said defendants to said Holman for the sole purpose of enabling him to conceal, by means thereof, his said embezzlement of said county's funds in his hands as such treasurer, and with the intent on the part of said defendants to deceive and defraud said county thereof; that said defendants knew that said Holman had misappropriated said county's funds, and that he received said cash, certificate, and draft for the sole purpose of exhibiting them to said board of county commissioners as money in his hands as such treasurer, for the purpose and with the intent of concealing his embezzlement, and that the defendants, knowing said intent on the part of said Holman to deceive said board of county commissioners and conceal his embezzlement and defraud said county, conspired and colluded with said Holman to conceal such embezzlement and deceive such board of county commissioners, and for that purpose, and with such intent, loaned said Holman said $4,200 cash and said certificate and draft; that said Holman did exhibit to said board of county commissioners such money, certificate, and draft with the money remaining in his hands as such county treasurer, and that they, believing the same to be county funds of said county, in the hands of said Holman as treasurer, did audit and allow his accounts as such treasurer as correct, and, relying thereon, did refrain from taking any steps to have said Holman arrested and prosecuted for embezzlement, and from having sued him while he was in this territory, and suffered him to remain in office as such treasurer; and that thereupon, and subsequently to said 5th day of January, 1886, and while still acting as such treasurer, he embezzled of the funds of said county, which came into his hands as such treasurer, the further sum of

$6,726.26, and that before such embezzlement was discovered he fled from said territory, and has not since returned or been discovered, or been arrested for such embezzlement; that by reason of such fraud and collusion said board of county commissioners were deceived, and, believing such money, draft and certificate, so temporarily loaned by said defendants to said Holman, were the property and funds of said county, and relying thereon, refrained from having said Holman arrested and prosecuted until he had fled from the territory, and refrained from suing said Holman to recover said sum so embezzled as aforesaid until he became hopelessly insolvent.

To this complaint the defendants demurred. The demurrer was overruled, and the defendants answered. Upon the trial of the action the plaintiff had judgment; the court, however, limiting the amount of the recovery to the sum which was embezzled by Holman subsequently to the accounting of January 5, 1886.

The only fraud alleged in the complaint, and proved upon the trial of the action, is that the defendants, knowing, or having knowledge of the circumstances sufficient to charge them with knowledge, that Holman was an embezzler of the county's funds on the 5th day of January, 1886, loaned him a sum of money and some cash certificates for the purpose of enabling him thereby to cause the county commissioners to believe that the money and funds thus exhibited belonged to the county, and thus secure his accounts to be audited and his embezzlement to be concealed; that the county commissioners were deceived thereby, and refrained from bringing action against said Holman to recover such funds, or to prosecute him, until he had escaped from the territory.

The verdict of the jury being against the defendants, the truth of all the material allegations of the complaint is established. The question, therefore, for our determination is whether these facts are sufficient, in law, to entitle the plaintiff to judgment.

The gist of the injury complained of is the fraudulent act of the defendants in loaning Holman the money and certificates to enable him to have his accounts as county treasurer audited, and conceal from the board of county commissioners the fact of his embezzlement of the funds of the county, knowing that he was an embezzler.

In order to maintain an action for the fraudulent acts of another, it is absolutely necessary for the plaintiff to prove, not only that damage has been sustained by him, and that the defendant has committed a wrong, but also that the damage is the necessary result of the wrongful act, and such damage must be susceptible of proof, and capable of being clearly ascertained. Lamb v. Stone, 11 Pick. 526.

What damage has the plaintiff sustained by reason of the fraudulent acts alleged and found against the defendants? It lost no claim or lien against the property of Holman, for it had no lien thereon. Nor is it even alleged that he at any time had any property from which the deficit could have been made. It did not lose custody of his body, for he had not been arrested, nor, so far as the record indicates, had any steps whatever been taken to that end. There is nothing to show that any such proceeding was contemplated. All that can be said is that if the defendants had not by their fraudulent act in loaning Holman the money and certificates, and thus have enabled him to deceive the board of county commissioners, he could not have concealed the first of his embezzlement, that they would have discovered it, and, having discovered it, would have prosecuted him criminally, and brought actions against him to recover the amount.

Upon what theory can an action for such an injury be maintained? How is the fact that the plaintiff refrained from procuring the arrest of the defaulter because of this act of the defendants to be established? By what process are we to determine what designs the county commissioners would have formed in their minds had they known facts of which they were ignorant, or, having ascertained them, what action they would have taken? We may speculate on what men would ordinarily do under such circumstances, but to prove precisely what they would do, so as to know it as an established fact, is an absolute impossibility. But if we assume that the county commissioners, had it not been for the fraudulent act of the defendants, would have discovered the embezzlement by Holman, and removed him from office, could we then say that the plaintiff had shown itself entitled to recover against the defendants for the amount stolen subsequent to January 5, 1886, the day the fraud was committed which enabled

Holman to conceal his crime? To do this we should be obliged to determine that the county treasurer who would have been appointed to succeed him would have been more honest, and not have embezzled the funds. How is this to be proved? How is it to be determined who they would have appointed, or that such appointee would not have embezzled the county's funds, or that they might not have been stolen by some one else? Such facts are not susceptible of legal proof. They are wholly conjectural, and beyond the limits of the knowledge of mankind. And though it is not alleged that Holman at any time had any property, yet, if we assume that he had, we cannot undertake to say that he might not have sold it to a *bona fide* purchaser, or that some other creditor would not have attached it. It is, therefore, impossible to determine whether the plaintiff would have discovered the embezzlement, and had Holman arrested, or have recovered the amount embezzled, had the defendants not loaned him the money or certificates; and it is equally impossible to ascertain whether he would have been suspended from his office, or his successor therein would not have embezzled a like sum. It is not apparent wherein the plaintiff has sustained any damage by the fraud or wrong of the defendants; but, if it has, it is impossible of ascertainment, and is too contingent, remote, and indefinite to constitute a cause of action. The act of the defendants in loaning him the money and certificates was not illegal. It was lawful in itself, and cannot be made the ground of a recovery against them.

This case is analogous to that of Bradley v. Fuller, 118 Mass. 239. In that case the allegations of the complaint were that the defendant represented to the plaintiff that a corporation, of which he was treasurer, and against which the plaintiff then held an overdue note, owed no other debts, and that there were no attachments upon its property; that such representations were made falsely and fraudulently, and for the purpose of inducing the plaintiff not to commence an action against said company until after the property thereof should be placed out of reach of process by plaintiff; that all the property of the company was subsequently attached and sold upon other debts; and that the plaintiff, relying on such representations, lost his debt. It was alleged, also, that the plaintiff was induced, by the representations made by said de-

fendant, to forbear securing payment of his note by attachment of said company's property, as he might and would have done but for such representations. In passing upon the question of the sufficiency of this declaration the court said : " The facts stated in these counts do not show a legal cause of action. * * * There is no attachment, or attempt to attach, on the part of the plaintiff, alleged. It does not appear that by reason of the alleged representations he lost any thing which he ever had. Taking these counts in the most favorable sense for the plaintiff, they simply charge that the plaintiff, induced by the falsehood alleged, refrained from carrying into effect an intention to attach, and that another creditor did attach and apply the company's property in payment of his debt." And the complaint was dismissed because it did not state a cause of action.

This is a much stronger case for the plaintiff than the one at bar, for in this complaint it is not even stated that there was any intention to institute proceedings for the recovery of money. There could not have been, for the plaintiff did not know of the embezzlement; but there is no allegation that Holman owned any property at any time, and, indeed, there is no allegation that he has not now property within the territory. So in Lamb v. Stone, 11 Pick. 527, which was an action to recover damages from the defendant because of a fraud perpetrated by him upon the plaintiff in purchasing the property of a person who was indebted to the plaintiff, and assisting him to abscond in order to prevent the plaintiff from collecting his debt. The court held that these facts did not constitute a cause of action. In Wellington v. Small, 3 Cush. 145, it was alleged that the defendants and Dexter Small were merchants, and that the latter purchased goods of sundry persons on credit to a large amount; that he gave notes therefor, which were indorsed to plaintiff; that he had not paid the same, and was insolvent, and had no property; that before the notes matured the defendants combined to defraud the plaintiff, and, to enable Dexter Small to take the poor debtor's oath, and to hinder and delay the plaintiff from securing and recovering payment of his debt, and fraudulently and without consideration, removed from the state a large portion of said Dexter Small's goods; that the defendant George Small fraudulently received

and concealed the same from plaintiff, and prevented the levying of an attachment upon them, both parties knowing that the goods, or the notes given therefor, had not been paid ; that the defendant afterward, in pursuance of their fraudulent and unlawful intent and conspiracy, canceled and discharged a valid debt due from one George Small to Dexter Small, and removed other goods of said debtor out of the state fraudulently and with such intent ; that plaintiff had recovered judgment against said debtor, but by reason of the fraudulent acts of said debtor he was unable to collect his judgment ; and that said debtor had been enabled to take the poor debtor's oath by the alleged fraudulent action of said defendant, and had taken the same and been discharged. The court, in giving its opinion, said : " The uncertainty of the plaintiff's damage seems, of itself alone, to be a sufficient reason for his not recovering. In an action on the case *ex delicto* the plaintiff must show injury and damage ; and these must be shown as facts, by legal proofs, except in a few cases, where, by the rule of law, damage is presumed from the act complained of. This case does not fall within that exception. How could this plaintiff prove that he suffered any damage from the acts of the defendant which are averred in the declaration ? How could he prove that he would have secured his debt by attaching the property of his debtor, if the defendant had not intermeddled with it ? Other creditors might have attached it before him, or it might have been stolen or destroyed while in the debtor's possession. The ·fact that the plaintiff has suffered actual damage from the defendant's conduct is not capable of legal proof, because it is not within the compass of human knowledge, and, therefore, cannot be shewn by human testimony. It depends on numberless unknown contingencies, and can be nothing more than a matter of conjecture." To the same effect are Morgan v. Bliss, 2 Mass. 111, and Randall v. Hazelton, 12 Allen, 412.

The allegation of conspiracy in the complaint does not change the nature of the action. The ground of the action is the fraud committed, the wrong done, and the damage occasioned thereby. An allegation of conspiracy is doubtless proper when it is sought to charge two or more defendants with combining or acting jointly to accomplish the wrong complained of, but it is not es-

sential for any other purpose. Verplank v. Van Buren, 76 N. Y. 247; Parker v. Huntington, 2 Gray, 124; Laverty v. Varnarsdale, 65 Pa. St. 507.

The cases relied upon by the plaintiff (Zabriskie v. Smith, 13 N. Y. 328; Pasley v. Freeman, 2 Smith, Lead. Cas. 75; Endsley v. Johns, 60 Am. Rep. 572, 12 N. E. Rep. 247; and others) are not analogous to the case at bar, and do not sustain the plaintiff's contentior

We are unable to discover any legal hypothesis upon which this action can be sustained, and the judgment appealed from must, therefore, be reversed and the action dismissed. Judgment reversed and action dismissed, with costs; all the justices concurring, excepting McConnell and Templeton, JJ., not sitting.