Harlan A. SCHMIDT and Earl J. Schmidt, Plaintiffs and Appellants,

v.

WILDCAT CAVE, INC., Defendant and Respondent.

No. 11714.

Supreme Court of South Dakota.

Dec. 21, 1977.

Harlan A. Schmidt pro se.

Gordon Verne Goodsell, Rapid City, for plaintiff and appellant Earl J. Schmidt.

Terrance J. Crow, Hill City, for defendant and respondent.

ZASTROW, Justice (on reassignment).

From a verdict and judgment for defendant-seller (Wildcat Cave, Inc.) denying damages in an action for deceit and from an order denying a new trial, plaintiffs-purchasers (Schmidts) appeal. We affirm.

On March 31, 1973, Wildcat Cave, Inc. contracted to sell certain real and personal property to the Schmidts. The real property consisted of an 1.65-acre lot and an 80-acre tract of land on which a tourist attraction known as Wildcat Cave was located. The owners of Wildcat Cave, Inc., Mr. and Mrs. Stanley Wallberg, lived in a mobile home on what they thought was a part of the 80-acre tract. In listing the property for sale, the seller designated the asking price for the entire 81.65 acres as $67,000, or, alternatively, $56,000, if the seller could retain the 5-acre homesite. The Schmidts desired all of the real property for proposed parking lot expansion and, after negotiations, purchased the 81.65 acres for $58,500. Thereafter, the Schmidts discovered that although they had received 81.65 acres, the mobile home site was not owned by Wildcat Cave, Inc. but was United States Forest Service land.

Other discoveries made by Schmidts were (1) that the annual number of paid admissions to the tourist attraction allegedly represented as over 10,000 was a total from 1949, but the 1971[1] total admissions were significantly lower; (2) that the number of billboards advertising the attraction was considerably less than allegedly represented; and (3) that the 1971 gross income from the attraction was $6,849.45, not the $9,000 allegedly represented to Schmidts. Because of these discoveries, Schmidts commenced an action on July 24, 1974, to recover $86,000[2] in damages from Wildcat Cave, Inc. for "false, fraudulent and deceitful representations."

From an unfavorable jury verdict, Schmidts have appealed and contend that reversible error was committed by the trial court in (1) not instructing the jury on constructive fraud, (2) incorrectly instructing the jury on the certainty of damages requirement, (3) incorrectly taxing as costs certain items, and (4) not granting a new trial.

### Constructive Fraud

The Schmidts first contend that the trial court committed reversible error in failing to give a constructive fraud instruction. We must first determine whether the claimed error is reviewable. It is beyond dispute that a court must instruct the jury fully on the issues presented by the plead-

ings and evidence. SDCL 15–6–51(a). However, the failure of a court to correctly or fully instruct the jury is not reviewable unless an objection or exception to the instruction identifying the defect therein with sufficient particularity was taken or a written instruction correctly stating the law was requested. SDCL 15–6–51; *Englebert v. Ryder*, 1958, 77 S.D. 333, 91 N.W.2d 739; *Lang v. Burns*, 1959, 77 S.D. 626, 97 N.W.2d 863; *Ross v. Foss*, 1958, 77 S.D. 358, 92 N.W.2d 147. However, SDCL 15–6–51 is not intended to be used as a technical excuse for overlooking the trial court's erroneous instructions. In making objections, no particular formality is required if it is clear that the trial judge was informed of the possible errors so that he may have the opportunity to correct the instructions. See 5A Moore's Federal Practice ¶ 51.04; Wright & Miller, Federal Practice and Procedure: Civil § 2554.

The record discloses that the Schmidts did not present any written, "requested" instruction but did object and except to the exclusion of constructive fraud from Instruction No. 9.[3] The objection sufficiently identified the failure to instruct on constructive fraud as an alleged legal defect to allow this court to review the correctness of the court's instruction. The trial court, however, was correct.[4]

An instruction on constructive fraud, as defined in SDCL 53–4–6, should

---

1. Due to the devastating flood of June 9, 1972, the cave had been damaged and the attraction had not been open for business during the summer of 1972.

2. The trial testimony of plaintiffs' expert showed an actual value of $25,000 and a value as represented of $82,000. The defendant's expert testimony was that the actual value of the land was $53,000, and that the value as "misrepresented" was the same.

3. "Your Honor, I want the record to show an objection and an exception to that instruction for the following reasons; that in our complaint we have not only alleged deceit and fraud, but we have alleged falsity, falsely and deceitfully represent the following things and et cetera, and the false part of the allegation, it seems to me brings in this element of constructive fraud, which allows for recovery for any breach of duty which with any actual fraudulent intent gains an advantage to the person in

fault or anyone claiming under him by misleading another to his prejudice or to the prejudice of anyone claiming under him. Now, just so the record is clear, I object to that instruction because it doesn't include this instructive (sic) fraud theory I have just mentioned.

THE COURT: Exception is disallowed, (sic) and I may say for the record that the particular instruction which counsel asked for is a constructive fraud which does not apply in a tort action."

4. The court determined that Schmidts' action was one in tort. It had the duty to interpret from the pleadings the nature of the action. 1 C.J.S. Actions § 46; 1 Am.Jur.2d, Actions, § 28. Its determination was correct. Indeed, the Schmidts repeatedly stated that their action was in tort; they seek tort damages and the measure of recovery, and the instructions thereon are those allowed in tort. They specifically disclaimed any intention to seek rescission with restitutionary damages. For a dis-

not be given in a tort action for deceit brought under SDCL 20–10. SDCL 53–4 makes contracts obtained by duress, fraud, undue influence, or mistake voidable. SDCL 53–4–5 defines actual fraud which makes a contract voidable; SDCL 53–4–6 defines constructive fraud which makes a contract voidable. The tort action of deceit is based only upon actual fraud as defined by SDCL 20–10–2, and requires scienter or its equivalent. Constructive fraud, which requires no fraudulent intent, is not a basis for deceit under SDCL 20–10, nor under common law, 37 C.J.S. Fraud §§ 2, 4; 37 Am.Jur.2d, Fraud and Deceit, §§ 185, 188, 197, 220. Although actual fraud may be the basis of tort actions and contract actions, constructive fraud is the basis only for actions for the avoidance of contracts. 37 C.J.S. Fraud §§ 2, 4; 37 Am.Jur.2d, Fraud and Deceit, § 220; 17 C.J.S. Contracts §§ 149, 152, 154(c), 160.

 Here, the Schmidts were not raising a defense to an action for damages for a breach of the contract, nor were they attempting to have the contract rescinded under SDCL 21–12–1, SDCL 53–11–2 (see *Baker v. Jewell*, 1959, 77 S.D. 573, 96 N.W.2d 299) or reformed under SDCL 21–11–1. In such contract actions, an instruction on constructive fraud would have been proper, but in a tort action, as pleaded by the plaintiffs, it is not.

 Schmidts also argue that they were entitled to an instruction upon the theory of "negligent misrepresentation." However, no instructions, written or otherwise, were presented to the trial court and no objections or exceptions to the instructions for a failure to instruct on "negligent misrepresentation" were made and there was nothing in the plaintiffs' pleadings or evidence to suggest such a theory of recovery. Instead, Schmidts argue that their request for an instruction on "constructive fraud" was synonymous with a request for an instruction on "negligent misrepresentation."

Whatever similarities there may be between our statutory "constructive fraud" [5] and "negligent misrepresentation," [6] the objection by the Schmidts to Instruction No. 9 (see footnote 3) was not sufficient to preserve as error the trial court's failure to instruct on the tort of negligent misrepresentation.

 Schmidts argue that the court's definition of "actionable fraud" requiring that a representation must be "known to be untrue by the party making it, or else recklessly made" was error. Again, the plaintiffs attempt to raise this issue based upon their objection to Instruction No. 9. Nothing in that objection even remotely identifies with particularity this alleged defect, and it is not reviewable on appeal.

### Certainty of Damages

 Instruction No. 10 is complained of as incorrectly stating the rule of damages

---

cussion of the differences between the tort action of deceit and a contract action on fraud, see Prosser, Torts (4th Ed.), Chap. 18, p. 683; 37 Am.Jur.2d, Fraud and Deceit, §§ 323–341.

**5.** The statutory definition of constructive fraud found in SDCL 53–4–6 is: "Constructive fraud consists: (1) In any breach of duty which, without any actually fraudulent intent, gains an advantage to the person in fault or anyone claiming under him, by misleading another to his prejudice or to the prejudice of anyone claiming under him; or (2) In any such act or omission as the law specially declares to be fraudulent, without respect to actual fraud." See also Restatement, Second, Contracts, §§ 470–491; Restatement, Second, Contracts, §§ 301–315 (Tentative drafts Nos. 11 and 12). See 37 C.J.S. Fraud § 2 c; 37 Am.Jur.2d, Fraud and Deceit, §§ 4–16.

**6.** See *Boos v. Claude*, 1943, 69 S.D. 254, 9 N.W.2d 262; *Moore v. Kluthe & Lane Ins. Agency, Inc.*, 1975, S.D., 234 N.W.2d 260. Negligent misrepresentation is defined by the latest addition of the Restatement, Second, Torts § 552 as follows: *"Information Negligently Supplied for the Guidance of Others (1) One who, in the court of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.* * * *"* (emphasis supplied)

in a deceit action. As given, the instruction was:

"You are further instructed ladies and gentlemen that a plaintiff seeking damages in law action for fraud must prove that he has suffered damages directly as a consequence of fraud and to an extent that is definite and ascertainable."

The plaintiffs on appeal argue that the *amount* of damages in a tort action need only be proven with "reasonable certainty." The defendant asserts that the plaintiffs did not properly preserve this objection to the instructions on these grounds. The plaintiffs' objection [7] is sufficient to raise the issue of whether the instruction correctly stated the certainty of damages requirement.

The language of Instruction No. 10 was obviously taken from dicta in *Sabbagh v. Professional & Business Men's Life Insurance Company,* 1962, 79 S.D. 615, 628, 116 N.W.2d 513, 520. The language of *Sabbagh* was an incomplete statement taken from the text of 24 Am.Jur., Fraud and Deceit, § 265:

"Hence, one seeking to recover damages for fraud in a law action must prove that he has suffered a loss directly from, and as a clear and necessary consequence of, the fraud to an extent so definite and ascertainable that an award providing for the payment to him of a sum properly compensating him for the fraud practiced upon him, or granting him adequate relief by way of recoupment, may be made." [8]

See also *County of Nelson v. Northcote,* 6 Dak. 378, 43 N.W. 897.

Instruction No. 10 was apparently given to advise the jury that it was not to make an award for damages which were uncertain, remote, conjectural or speculative, but to give recovery for those which were proximately caused by the fraudulent representations. SDCL 21–3–1; 37 Am. Jur.2d, Fraud and Deceit, §§ 283, 343; 37 C.J.S. Fraud § 141; Prosser, Torts (4th Ed.), Chap. 18, § 110. This is in accord with this court's decision that:

"The authorities recognize a distinction between uncertainty as to the cause or fact of damages and uncertainty as to the amount. See Annotation in 78 A.L.R. 858. The rule against indefinite or uncertain damages applies only to such damages as are not the definite or certain results of the wrong. Uncertainty as to the fact is fatal to recovery, but uncertainty as to the measure or extent of the damages does not bar recovery. * * " *Kowing v. Williams,* 1954, 75 S.D. 454, 459, 67 N.W.2d 780, 783.

See also 22 Am.Jur.2d, Damages, §§ 23–25; 25 C.J.S. Damages § 25, et seq. In determining the amount of recovery, there need only be "a reasonable basis for measuring the loss" and it is only necessary that the damages "can be measured with reasonable certainty." *Kressly v. Theberge,* 1961, 79 S.D. 386, 112 N.W.2d 232; *Swenson v. Chevron Chemical Company,* 1975, S.D., 234 N.W.2d 38; *Fredrick v. Dreyer,* 1977, S.D., 257 N.W.2d 835.

The confusion arises from the use of the word "extent" in Instruction No. 10 and in the American Jurisprudence text. "Extent" as used was intended to refer to the scope or degree of the injury, not the amount,[9] but in the context used, the word

---

**7.** "Your Honor, we object and except to that instruction for the following reason; that instruction in effect says that in order to recover, a Plaintiff must prove that he has suffered damages directly as a consequence of fraud and to an extent that is definite and ascertainable. I submit that is not the law of the state of South Dakota; is that once it's been determined that damage has been incurred, there is no requirement that the proof of how much be definite. I would go along with that portion about ascertainable, but definite, the authorities are clear that sometimes you speculate a

little bit on these damages, and that is permissible providing it is proven conclusively that there is some damage, and I further object to it for the reason it is covered and very well in all of the other instructions in this case."

**8.** The similar language is currently found at 37 Am.Jur.2d, Fraud and Deceit, §§ 343, 449.

**9.** In reviewing the authorities cited by the original Am.Jur. text as authority, we find none which uses the phrase "to an extent so definite and certain." All of the decisions clearly indi-

"extent" could be understood to be synonymous with "amount." Therefore, the use of "extent" in Instruction No. 10 relating to proximate cause certainly makes it ambiguous. Because the instruction did not convey the entire legal principle intended, it can also be characterized as incomplete. However, an appellant who seeks to set aside a civil verdict because of an incomplete or ambiguous instruction must establish that it was prejudicial (5A C.J.S. Appeal and Error § 1763(2)), i. e., that under the evidence, the jury might have, and probably would have, returned a different verdict if a correct instruction had been given. *Dwyer v. Christensen,* 1958, 77 S.D. 381, 92 N.W.2d 199. It is also the duty of this court to consider the instructions together in determining whether or not the giving of the instruction was prejudicial error. *Degen v. Bayman,* 1976, S.D., 241 N.W.2d 703.

We note that the trial court did correctly instruct the jury that the measure of damages in a deceit action based upon fraudulent representations is the difference between the actual market value of the property at the time of the sale and the value that the property would have had had the representation been true. *Hallen v. Martin,* 1918, 40 S.D. 343, 167 N.W. 314; *Ward v. Dakota Telephone & Electric Co.,* 1925, 49 S.D. 135, 206 N.W. 695; *Barker v. Coats,* 1918, 41 S.D. 45, 168 N.W. 797.

In reviewing the testimony, it appears that the major issue in contention was not the amount of damage but whether or not any of the alleged misrepresentations had in fact been made. Both the defendant and his real estate agent denied either making the representations or making the representations as fact. We do not feel that this one instruction, if correctly given, would have resulted in a different verdict in light of the many other instructions on damages and the plaintiffs' burden of proof given without objection. *Mueller v. Mueller,* 1974, S.D., 221 N.W.2d 39. We therefore find the instruction not to have been prejudicial error.

### Taxation of Costs

After entry of judgment on March 24, 1975, the attorney for the defendant gave written notice to Schmidts' attorney on April 1, 1975, that costs would be taxed by the clerk on April 9th, which costs were then taxed and inserted into the judgment. On July 17, 1975, Schmidts filed a notice of appeal from the entire judgment. On August 8, 1975, Schmidts appealed the taxation of certain items to the trial court, specifying the grounds wherein the taxation of costs was allegedly improper. On August 22, 1975, the trial court denied their appeal from the taxation of costs. When Schmidts filed their assignments of error they included an allegation that the trial court improperly denied their appeal from the taxation of costs.

Schmidts did not file a separate notice of appeal from the order denying their appeal from the taxation of costs pursuant to SDCL 15–26–1(4).

This court has held that an order to retax a cost bill is a special order and, when made subsequent to the entry of the final judgment, may not be reviewed upon appeal from the judgment but only by a direct appeal from the order. *Sambo v. Semmler,* 1933, 61 S.D. 228, 248 N.W. 197. The current statute, SDCL 15–6–54(d), contains provisions which are substantially identical to those in the statute which was in effect in 1933, Rev.Code 1919, § 2616, and, although the procedure may be cumbersome, we adhere to the *Sambo v. Semmler* decision. The order denying the plaintiffs' appeal of the costs is not properly before this court for review.

### New Trial

The plaintiffs argue that the trial court erred in failing to grant their motion

---

cate that it is the fact, cause, or existence of damage that must be definite and certain. See *United States v. Dunn,* 268 U.S. 121, 45 S.Ct. 451, 69 L.Ed. 876; *County of Nelson v. Northcote,* 6 Dak. 378, 43 N.W. 897, 6 L.R.A. 230;

*Dawe v. Morris,* 149 Mass. 188, 21 N.E. 313, 4 L.R.A. 158, 14 Am.St.Rpts. 404; *Wellington v. Small,* 3 Cushing (Mass.) 145, 50 Am.Dec. 719; *Russell v. Industrial Transp. Co.,* 113 Tex. 441, 251 S.W. 1034; 258 S.W. 462; 51 A.L.R. 1.

for a new trial. The grounds alleged in support of the motion for new trial were that the court erred in: (1) giving an instruction confining the plaintiffs to the tort theory of deceit, (2) refusing an instruction on constructive fraud, and (3) allowing a judgment which unjustly enriched the defendant. The first two grounds have been decided by this opinion adversely to the plaintiffs. The third ground is not supported by the citation of any authorities in the plaintiffs' brief and is therefore deemed abandoned. See *Shaffer v. Honeywell, Inc.,* 1976, S.D., 249 N.W.2d 251. For the reasons previously stated, we conclude that the trial court did not err in denying the motion for a new trial on the grounds raised by the plaintiff.

The plaintiffs argue a variety of other issues which they allege as error; however, we find no objection or exceptions in the trial transcript nor in the assignments of error to properly preserve them for review on appeal.

The judgment is affirmed.

All the Justices concur.