**Nathan MORITZ and Frances Moritz, Plaintiffs and Appellants,**

v.

**C & R TRANSFER CO., a South Dakota Corporation, Defendant, Third Party Plaintiff, and Respondent,**

and

**Black Hills Power and Light Company and Jack Naugle, Defendants,**

and

**Bob Hawk and Associates, Inc., a South Dakota Corporation, Third Party Defendant.**

No. 12243.

Supreme Court of South Dakota.

Argued April 17, 1978.

Decided June 8, 1978.

Franklin J. Wallahan and Marvin D. Truhe of Hanley, Wallahan, Huffman & Truhe, Rapid City, for plaintiffs and appellants.

George Beal, Rapid City, for defendant, third party plaintiff and respondent C & R Transfer Co.

William G. Porter of Costello, Porter, Hill, Nelson, Heisterkamp & Bushnell, Rapid City, for defendants Black Hills Power & Light Co. and Jack Naugle.

Thomas G. Fritz of Lynn, Jackson, Shultz, Ireland & Lebrun, Rapid City, for third party defendant Bob Hawk and Associates, Inc.

MILLER, Circuit Judge.

This is an appeal from a summary judgment entered in favor of defendant-respondent C & R Transfer Company and against plaintiff-appellant. We affirm.

Plaintiff additionally appeals from the taxing of certain costs. For reasons set forth below, that part of the appeal is dismissed.

## PROCEDURAL HISTORY

Plaintiff, an employee of Black Hills Power & Light (BHP&L), commenced this action seeking to recover money damages for injuries he sustained while working on certain electrical apparatus owned by his employer which was located upon property owned by C&R Transfer Company (C&R). Named as defendants were his employer (BHP&L), the landowner (C&R) and Jack R. Naugle, another BHP&L employee, who was supervising the work on the date of the accident. Various cross-claims and a third party action were filed, none of which is material here.

BHP&L was dismissed out of the suit by the trial court for the reason that plaintiff was covered by worker's compensation and his sole relief against his employer was benefits afforded under the provisions of the Worker's Compensation Law. That determination has not been appealed.

The genesis of this appeal is the summary judgment entered in favor of C&R, against plaintiff, wherein the court made the finding that there was no reason for delay and expressed direction for the entry of the final judgment (SDCL 15–6–54(b)). Also appealed is the taxation of approximately $1,300.00 in costs.

## FACTUAL SITUATION

On March 15, 1974, while working on certain electrical apparatus located on C&R property, the plaintiff suffered a 14,000 volt electrical burn resulting in, among other injuries, the amputation of his left forearm and hand.

The electrical apparatus included a "transclosure," which is a large metal box with swinging doors and containing three electric transformers. It and all of the electrical equipment in and attached to it are owned by BHP&L. It sits on a large concrete pad adjacent to the building owned by C&R.

The pad and transclosure were originally installed and completed in September, 1973. The pad was constructed and placed by Bob Hawk and Associates, a third party defendant in the action. The pad was the property of C&R. The transclosure was placed and installed by BHP&L. It remains locked at all times with only BHP&L having keys to the doors and access to the electrical equipment inside. Some deposition testimony did indicate that on occasions BHP&L will allow customers' electricians to borrow keys to enter the transclosure for secondary hookups.

Some months after installation it was determined that the pad had been constructed six to eight inches below proper grade level, making it difficult to open the doors and creating the possibility of rain water entering it. For these and other reasons, C&R contacted BHP&L requesting that the pad be raised. BHP&L employees inspected, agreed with the need, and made engineering and work plans to accomplish the task.

On the date of the accident plaintiff and his supervisor, defendant Naugle, went to C&R to accomplish the necessary work to raise the pad and transclosure. The pad was to be raised and concrete blocks were going to be placed underneath it. The original plan was to de-energize the equipment rather than doing it while the equipment was "hot." It was anticipated that the work would take one to two hours.

Naugle visited with some C&R employee who advised that they preferred not to have the power outage, since it would result in a loss of their telephone service during the time the power was off. Naugle then determined, as was his prerogative under the company policy, to do the work while the equipment was "hot." He so advised the plaintiff.

Work was commenced toward the task of raising the transclosure. Nuts and studs were removed and a sling was placed around the transclosure, which sling was attached to a boom and winch on a truck. It is unclear, and immaterial to this appeal, as to how the accident occurred. Suffice it to say that while the transclosure was in the sling, and the plaintiff was doing some work, he came in contact with some part of the equipment and received the injury.

The plaintiff at the time of the accident had been employed by BHP&L approximately twenty years and had a great deal of experience working with "hot" equipment. He was not a novice in dealing with high-voltage electrical equipment.

It is interesting to note that subsequent to the accident the transclosure was raised while de-energized. Prior to the power outage, to do the work one of several BHP&L portable generators was connected to the C&R service so that they were not without power, at least through their telephone service.

It would appear that the procedure of raising transclosures was not unusual or unique, nor was it unusual or in violation of the safety manual to do it without de-energizing the equipment.

## ISSUES PRESENTED.

Plaintiff claims that the trial court erred in granting summary judgment, urging:

(1) That BHP&L was an independent contractor of and that its negligence is imputable to the landowner (C&R) because the work being performed was inherently dangerous; and

(2) That C&R was guilty of direct negligence, it having a non-delegable duty to keep its premises safe for business invitees.

As stated before, plaintiff urges that the trial court erred in the taxation of certain costs.

## VICARIOUS LIABILITY

On this issue plaintiff reminds us of our holding in *McCarrier v. Hollister*, 1902, 15 S.D. 366, 89 N.W. 862, wherein we held that a landowner owes a non-delegable duty to persons injured during the course of work being performed by an independent contractor if that work is "intrinsically dangerous, or will probably result in injury to third persons."

We are advised that in *Hagberg v. City of Sioux Falls*, 281 F.Supp. 460 (D.S.D., 1968) Chief Judge Nichol, because we had not had an occasion to make a ruling on the issue and in attempting "to arrive at the decision likely to be reached by the South Dakota Supreme Court if the matters were before that tribunal" held that our holding in *McCarrier* would be extended to create a duty to employees of an independent contractor when doing work which is intrinsically dangerous. Before we can decide that issue, however, it must first be determined that BHP&L was in fact an independent contractor of C&R.

The seemingly universal definition of an independent contractor is as one who carries on an independent business and contracts to do a piece of work according to his own methods, without being subject to the control of the employer, except as to the product or the result of the work. See *Steen v. Potts*, 1953, 75 S.D. 184, 61 N.W.2d 825; *Baer v. Armour & Co.*, 1934, 63 S.D. 299, 258 N.W. 135; *Mallinger v. Webster City Oil Co.*, 1931, 211 Iowa 847, 234 N.W. 254; *Dumire v. Martin*, 1970, 84 S.D. 572, 174 N.W.2d 215; *Jeitz v. Fleming*, 1974, 88 S.D. 239, 217 N.W.2d 868; and 41 Am. Jur.2d, "Independent Contractors," Section 1. Most cases distinguish between an independent contractor and an employer-employee relationship.

In this case, even though C&R was the owner of the concrete pad, BHP&L owned the transclosure and all of the equipment contained in it. It was BHP&L's problem that the doors could not be open fully, since it would be their employees who would open it for whatever work needed to be done. In the event water entered the transclosure, because of the improper drainage, it would result in damage to BHP&L property rather than that of C&R, with C&R's only detriment being the possibility of an outage. C&R did contact BHP&L advising of the situation. Thereafter BHP&L, through its employees, made inspections, did. engineering and planning, and commenced and ultimately completed the work.

We conclude that in the performance of the work BHP&L was not in any manner, be it independent contract or other, an agent of C&R. It was a principal

working with and on its own equipment and in furtherance of its own business. As a result C&R owed no duty to it or to its employees for the injuries which occurred.

In view of this we need not determine the legal duty owed by a landowner to employees of independent contractors.

## DIRECT NEGLIGENCE

Here plaintiff generally argues that C&R is liable on the principle that a landowner has a non-delegable duty to keep the premises safe for business invitees. His arguments again presuppose that BHP&L was an independent contractor of C&R, which argument was rejected by us above.

We have considered all of plaintiff's arguments on this issue and find them to be without merit.

## TAXATION OF COSTS

The summary judgment was signed by the trial judge on March 31, 1977. It included the following language, customary in judgments:

. . . and that Defendant, C&R Transfer Co. have and recover its statutory costs and disbursements necessarily incurred herein against the above-named Plaintiffs, in the amount of $_____ which sum shall hereafter be taxed by the Clerk and inserted above, all as provided by SDCL 15–6–54(d).

On April 4, 1977, C&R's counsel filed a Statement and Notice of Taxation of Costs of Defendant C&R Transfer Co. Against the Plaintiff which specified and requested costs of $1,324.40, most of which related to the taking of and payment for depositions. It gave notice that the same would be taxed by the clerk of courts on April 7, 1977, at 4:00 o'clock p. m. At the bottom of the instrument is the following clause:

Defendant, C&R Transfer Co.'s costs against the Plaintiffs taxed and allowed in the amount of $_____ on the 7th day of April, 1977.

Eileen Howe, Clerk of Courts

On April 5, 1977, plaintiff's counsel filed an Objection to Taxation of Costs and demanded certification to the circuit court for determination.

Subsequently both counsel submitted briefs in support of their respective positions on the costs issue. The record is silent as to whether a hearing was held by the trial judge on that issue. The record does contain a copy of a letter to counsel from the trial court dated May 19, 1977, in which he indicated that he had reviewed the taxation of costs and had considered the arguments and authorities submitted by the attorneys. After noting that the costs of two of the witnesses were no longer in dispute, the letter concluded:

*All other costs are allowed* except for the transcript fee for Dr. Larson's deposition. (emphasis supplied)

The record is devoid of anything implementing this letter. No order has been filed providing for taxation of costs. The clerk has not inserted the cost amount in either the summary judgment or the notice prepared by C&R's counsel. From the record then, as it is before us, there has been no enforceable order or other requirement for the payment of costs other than the trial judge's letter, which is not appealable. See SDCL 15–26–1.

We have heretofore held that an order taxing costs is a special order and when made subsequent to the entry of judgment may not be reviewed upon appeal from the judgment but only by a direct appeal from the order. *Sambo v. Semmler*, 1933, 61 S.D. 228, 248 N.W. 197 and *Schmidt v. Wildcat Cave, Inc.*, 1977, S.D., 261 N.W.2d 114. In this action the notice of appeal specified that it was an appeal from both the final judgment and from the taxation costs; however, as stated before, there was no proper order to appeal from.

In the event the trial court is called upon to ascertain taxable costs in this action, it is reminded that the statute (SDCL 15–17–4) allows only "the *necessary* expense of taking depositions and procuring *necessary* evidence." (emphasis supplied)

It appears that much of the deposition testimony here is principally "discovery" in nature and should not be taxable as costs. See *Wagner v. Wagner*, 1969, 83 S.D. 565, 163 N.W.2d 339; *Grady v. Felker*, 1971, 85 S.D. 477, 186 N.W.2d 509; and 20 Am. Jur.2d "Costs," Section 56 et seq.

DUNN, C. J., and WOLLMAN and MORGAN, JJ., and WINANS, Retired Justice, concur.

WINANS, Retired Justice, sitting for ZASTROW, J., disqualified.

MILLER, Circuit Judge, sitting for PORTER, J., disqualified.