Rick FREY, Plaintiff and Appellant,

v.

Kerry KOUF, Defendant and Appellee.

No. 17547.

Supreme Court of South Dakota.

Considered on Briefs Feb. 11, 1992.

Decided April 22, 1992.

Mitchell D. Johnson, Rapid City, for plaintiff and appellant.

Wally Eklund of Johnson, Eklund and Davis, Gregory, and Gary G. Colbath of Banks, Johnson & Colbath, Rapid City, for defendant and appellee.

WUEST, Justice.

Plaintiff Frey (Frey) brought a cause of action against Defendant Kouf (Kouf) on the alternate theories of "intentional assault" (battery) and "negligent assault" (negligence). The matter was tried before a jury. The jury found in favor of Kouf, and the trial court entered a judgment dismissing the plaintiff's complaint. Frey made a timely motion for new trial and, in the alternative, for a judgment notwithstanding the verdict. The trial court de-

nied those motions. Frey appeals to this court raising the following issues:

I. Whether the trial court erred in instructing the jury on the definition of "intent" within the context of civil proceedings.

II. Whether the trial court erred in instructing the jury on contributory and comparative negligence.

Issue I is dispositive of this appeal. Because of an error of law, we reverse the judgment of the trial court, which includes the verdict on negligence. We will decide issue II only to provide guidance to the trial court on remand. We do not reach the other issues raised by Frey.

Frey and Kouf were friends and business associates. They bought and sold cars together and jointly owned property, including boats and an airplane. On March 12, 1990, Frey and Kouf met at a bar in Rapid City, South Dakota. Both men arrived at the bar sometime between 4:00 P.M. and 5:00 P.M. Both men consumed alcoholic beverages. The bartender testified both men drank steadily throughout the evening. A cocktail waitress testified they were intoxicated. Both men discussed a mutual business arrangement. The conversation became rather heated at times. Both men used profanity. At one point, the owner of the bar admonished both men to quiet down. The situation then seemed to resolve itself. Frey and Kouf had been sitting at the same table next to each other during their discussion. Subsequently, Frey moved to a seat further away from Kouf but still at the same table. Frey testified his move was caused by a feeling of tension which then existed between Frey and Kouf as a result of their animated discussion. The evidence concerning what happened next was highly conflicting.

Dawn Anderson (Anderson), a waitress at the bar, testified as follows. Shortly after she completed her shift, she was seated in the bar having an "after-work drink." While she was having her drink, she heard the discussion at the table where Frey and Kouf were seated get louder. She then observed Kouf stand up very quickly, his chair sliding into the wall, and proceed around the table with a glass in his hand. Kouf then hit Frey in the face with the glass. Anderson denied that Kouf threw the glass. She also denied having seen Kouf throw the glass on the table causing it to ricochet into Frey's face. After Kouf hit Frey in the face with the glass, Anderson saw Frey fall out of the chair. At this point, she testified Kouf was "right on top of him and was kicking the back of him." Anderson saw Kouf kick Frey in the back two or three times. Anderson testified the incident happened very quickly, and that, prior to the occurrence, there was no indication it was about to happen. At no time, did Anderson hear Frey threaten Kouf nor did she see Frey fight back.

Two other witnesses testified that, although they did not see the actual injury take place, Frey did not physically provoke Kouf. They also stated the incident occurred without warning. Kouf himself testified Frey did not threaten him with physical harm.

Kouf testified the time of the incident was "one of the angriest moments" of his life, that throwing the glass was his way of "venting his frustrations," and that he saw his "life unraveling" moments before the incident occurred. Kouf testified he was losing his business, his marriage was on the rocks, he was probably going bankrupt, and he vented these frustrations by picking up the bar glass and throwing it "in [Frey's] direction." Kouf denied "smashing" the glass into Frey's face. Kouf's attorney asked Kouf, "when the glass left your hand, did you intend to strike him in the face?" Kouf answered, "I didn't intend to *hurt* Rick Frey, that was not my intention." (Emphasis added). Later, Kouf stated he did not intend to *hit* Frey with the glass. He also testified "I picked the glass up and I threw it as quick as I could." Kouf then testified that, when he threw the glass, he was looking down, and "wanted it to catch his attention that I was angry." Kouf admitted he got carried away and was not justified in hurting Frey.

All the witnesses agreed Frey was bleeding profusely from his nose and mouth after the incident. The police and an am-

bulance were summoned to the bar. Kouf left before the police arrived. Frey testified he did not remember much of the incident. He remembered seeing Kouf stand up, and then caught a glimpse of something coming towards him out of the corner of his eye. After that, his vision was blurred. Later, he became aware of ambulance personnel who were providing him with treatment. Frey was then taken to a local hospital.

At Rapid City Regional Hospital, Dr. Bruce Allen treated Frey. Dr. Allen testified through his deposition Frey suffered a severed artery and lost approximately two pints of blood. Dr. Allen used sixty sutures to close the wounds in Frey's face.

Dr. Joseph Lytle provided Frey's follow-up care. He testified two of Frey's teeth were broken off. One of the teeth was broken off at the gum level, and the other was shattered and broken off at the bone level. It took Dr. Lytle four months to fully repair the damage to Frey's teeth. Dr. Lytle testified it takes substantial force to break teeth off. The type of force necessary would be comparable to what is seen in an automobile accident or when somebody dives into, and hits the bottom of, a swimming pool.

## I. LEGAL DEFINITION OF "INTENT."

One of the causes of action Frey brought was for intentional assault or battery. After the defense rested, counsel and the trial court settled jury instructions. Neither plaintiff nor defendant offered a jury instruction defining the element of intent. After a noon recess, the court informed counsel it had put in a jury instruction defining the word "intentionally." The instruction given is found in the South Dakota Criminal Pattern Jury Instructions. *See* S.D. Criminal Pattern Jury Instruction No. 1–11–1. Frey's attorney objected to the instruction, pointing out that it was incon-

sistent with our ruling in *VerBouwens v. Hamm Wood Products.* Frey's counsel informed the trial court of the definition set out in the *VerBouwens* decision (discussed *infra*). The court then asked Frey's counsel, "where's your proposal to replace the one that defines intent that I utilized? You don't have one?" Frey's counsel admitted he did not have a prepared instruction to define the term intentional. The trial court then stated, "In the absence of either side presenting me with a proposed instruction pursuant to the statutory procedure for settling instructions, I'm going to overrule your objection to the one ... that the court has used and you may be right in your definition, but we're about ready to commence argument and you don't have a proposal or a copy with your sources for me to use, so you are late."

We must initially determine whether Frey adequately preserved this issue for appeal. Kouf relies on the fact Frey failed to offer a proposed written instruction to the trial court defining "intent," and argues Frey, having failed to follow the prerequisites of SDCL 15–6–51(a)[1] has not preserved this issue for appeal. However, this assertion misapprehends Frey's argument. Frey is not objecting because the trial court rejected a proposed jury instruction. *Cf. Ballard v. Happy Jack's Supper Club*, 425 N.W.2d 385, 387 (S.D.1988) (handwritten instruction could have formed basis for amendment of court's jury instruction). Rather, Frey is objecting to the instruction adopted by the trial court. In *Schmidt v. Wildcat Cave, Inc.*, 261 N.W.2d 114 (S.D.1977) we held "failure of a court to correctly or fully instruct the jury is not reviewable unless an objection or exception to the instruction identifying the defect therein with sufficient particularity was taken *or* a written instruction correctly stating the law was requested." *Id.* at 116 (citing SDCL 15–6–51) (emphasis added).

1. SDCL 15–6–51(a) (1984) provides in pertinent part:
    All requests for instructions shall be in writing and in duplicate, and shall be presented to the court on or before the time fixed for settling instructions.
    . . . .

Such original requested instructions shall be typed, double-spaced, on letter-size, bond paper in such form that the judge can insert the original requested instruction in the set to be used by the jury in the event the instruction is adopted by the court.

Further, in *Glanzer v. St. Joseph Indian School*, 438 N.W.2d 204, 211 (S.D.1989), we held "an objection to an instruction need not be accompanied by a proposed instruction ... to place the objected-to instruction before this Court on appeal." *See also Aschoff v. Mobile Oil Corp.*, 261 N.W.2d 120, 125 (S.D.1977). Frey's counsel specifically objected to the intent instruction and informed the trial court of what he believed was the correct definition of intent.

■ During settlement, counsel must specify "the particular ground or grounds upon which the giving or rejecting of any instruction is objected to." SDCL 15–6–51(b) (1984). We have held that no particular formality is required when objecting to instructions; the objection is sufficient if the judge was informed of the possible error so that he might have the opportunity to make corrections. *Hogg v. First Nat. Bank of Aberdeen*, 386 N.W.2d 921, 925 (S.D.1986); *Schmidt*, 261 N.W.2d at 116. We conclude the trial court was adequately informed of the possible error, and Frey's counsel adequately preserved the matter for review pursuant to SDCL 15–6–51(b).[2]

■ We now turn to the merits of Frey's argument. Initially, the court instructed that jury battery is defined as "any willful and unlawful use of force or violence upon the person of another" and assault and battery is "an unlawful touching of the person of another...." The trial court then instructed the jury that wilfully "means intentionally." Then, as noted previously, the trial court, using the criminal pattern jury instruction, defined the word "intentionally" as follows:

> The word 'intentionally' or any derivatives thereof as used in these instructions means *a specific design to cause a certain result.*

(Emphasis added). In *VerBouwens v. Hamm Wood Products*, 334 N.W.2d 874 (S.D.1983) we held:

> [I]ntentional tortious conduct is when an ordinary, reasonable, prudent person would believe an injury was *substantially certain* to result from his conduct.... To establish intentional conduct, more than the knowledge and appreciation of risk is necessary; the known danger must cease to become only a foreseeable risk which an ordinary, reasonable, prudent person would avoid (ordinary negligence), and become a *substantial certainty.*

*Id.* at 876 (citing *Spivey v. Battaglia*, 258 So.2d 815 (Fla.1972)) (emphasis changed).[3] *Accord*, Restatement (Second) of Torts § 8A (1965).[4]

■ In a battery cause of action, it is not necessary to prove the actor had a "specific design" to cause bodily contact. "The intent with which tort liability is concerned is not necessarily a hostile intent, or a desire to do any harm.[5] Rather it is an intent to bring about a result which will invade the interests of another in a way that the law forbids." W. Keeton, D. Dobbs, R. Keeton, D. Owen, *Prosser and Keeton on the Law of Torts*, 36 (5th Ed.1984) (footnote added).[6]

---

2. We acknowledge the trial court was put in a difficult situation. Closing arguments were about to begin, and neither party had proposed any instruction defining "intent," a key element in Frey's battery cause of action. Nonetheless, "[u]nder South Dakota law, the judge is charged with the duty to instruct the jury as to the law of the case." *Ballard*, 425 N.W.2d at 387 (citing SDCL 15–6–51(a)). *Accord Glanzer*, 438 N.W.2d at 209.

3. In *VerBouwens*, we also held, contrary to the trial court's definition of willful, that willful or wanton misconduct is something less than intentional misconduct. *Id.* Neither party has argued this on appeal, however.

4. Restatement (Second) of Torts § 8A (1965) provides:

The word 'intent' is used throughout the Restatement of this Subject to denote that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it.

5. Restatement (Second) of Torts § 13 (1965) comment c provides in pertinent part:
If an act is done with the intention described in this Section, it is immaterial that the actor is not inspired by any personal hostility to the other, or a desire to injure him.

6. Restatement (Second) of Torts § 16 (1965) provides:
(1) If an act is done with the intention [meaning he believes the consequences are substantially certain to result] of inflicting upon another an offensive but not a harmful bodily

Here that result is an application of force upon the plaintiff's person. Intent "extends not only to those consequences which are desired, but also to those which the actor believes are substantially certain to follow from what the actor does." *Id.* at 35. *Accord* Restatement (Second) of Torts § 8A. By way of example, an actor who fires a bullet into a crowded room may desire that no one be hit, but if he knows it is substantially certain someone will be hit, the actor intends that consequence. *Prosser and Keeton, supra,* at 35.

■ Intent is an essential element in an action for assault and battery. 6A C.J.S. *Assault & Battery* § 9 (1975). Thus, the definition of intent was crucial in determining Kouf's liability for battery. The jury was instructed that, to find Kouf liable, it must find Kouf had a specific design to cause the injury to Frey. That was an incorrect statement of the law. Instead, the jury should have been instructed that, to find Kouf liable, it need only find that Kouf acted with substantial certainty that bodily contact with Frey would occur—that Frey would be struck with the glass. *See VerBouwens,* 334 N.W.2d at 876; Restatement (Second) of Torts §§ 8A, 13.

■ Here, Kouf testified he was only six feet away from Frey. He admitted the moment was one of the "angriest moments" in his life and that he hurled the glass in Frey's direction while looking down. However, Kouf testified he did not desire to harm Frey, but merely wished to "get his attention." Moreover, Frey also testified he did not think Kouf would "intentionally" harm him. Indeed, the defense concentrated on proving Kouf was not a malicious person and did not mean to hurt Frey. The jury found for Kouf on the intentional tort theory. It is apparent the jury's focus was improperly deflected from the true intent requirement set out in *VerBouwens,* that is, whether a reasonably prudent person would have been substantially certain that bodily contact would result from Kouf's conduct.

"For this court to set aside a civil verdict because of an erroneous instruction, prejudice must be established.... The appellant must demonstrate that under the evidence the jury might have, and probably would have, returned a different verdict if a correct instruction had been given. *Glanzer,* 438 N.W.2d at 209. *See also Schelske v. South Dakota Poultry Co-op.,* 465 N.W.2d 187, 190 (S.D.1991); *Schmidt* 261 N.W.2d at 119. "A jury utilizing the *VerBouwens* standard of intent might have, and probably would have, concluded Kouf was liable for battery. Thus, the instruction given by the trial court was not only erroneous but was prejudicial as well.

## II. PROPRIETY OF CONTRIBUTORY/COMPARATIVE NEGLIGENCE INSTRUCTION.

We reach Frey's next contention only to provide guidance to the trial court upon retrial of this matter. The trial court correctly instructed the jury contributory/comparative negligence was no defense to an intentional tort. The trial court then instructed the jury on contributory/comparative negligence as it applied to Frey's negligence cause of action. Frey argues the court erred because there was no evidence to support a contributory negligence instruction. We agree.

■ A trial court is to present only those issues to the jury by way of instruction which find support by competent evidence in the record. *Gerlach v. Ethan*

contact, ... and such act causes a bodily contact to the other, the actor is liable to the other for a battery although the act was not done with the intention of bringing about the resulting bodily harm.
Comment a provides:
In order that the actor shall be liable under the rule stated in this Section, it is not necessary that he intend to bring about the harmful contact which results from his act. It is enough that he intends to bring about an offensive contact ... and that the bodily harm results as a legal consequence from such offensive contact.... The interest in freedom from either form of contact ... is so far a part of the other's interest in his bodily security that the intention to inflict an offensive contact ... is sufficient to make the actor liable for a harmful contact resulting therefrom, even though such harmful contact was not intended.

*Coop. Lumber Ass'n.,* 478 N.W.2d 828, 830 (S.D.1991); *Schelske,* 465 N.W.2d at 190; *Hills of Rest Memorial Park v. Witte,* 427 N.W.2d 848, 851 (S.D.1988); *State v. Weisenstein,* 367 N.W.2d 201, 206 (S.D.1985); *Frazier v. Norton,* 334 N.W.2d 865, 869 (S.D.1983). Frey correctly identifies the definition of contributory negligence and what has been referred to as the "Right to Assume Doctrine." We set out both in *Williams Ins. v. Dee–Bee Contracting Co.,* 358 N.W.2d 231, 232 (S.D.1984):

> 'Contributory negligence is conduct for which plaintiff is responsible, amounting to a breach of duty which the law imposes upon persons to protect themselves from injury, and which, concurring and cooperating with actionable negligence for which defendant is responsible, contributes to the injury complained of as a proximate cause.' *Starnes v. Stofferahn,* 83 S.D. 424, 432, 160 N.W.2d 421, 426 (1968). 'In the absence of knowledge to the contrary, one who is conducting himself in accordance with standards of ordinary care may assume that he is not to be exposed to harm from a breach of duty which others owe to avoid injury to him.' *Rikansrud v. City of Canton,* 79 S.D. 592, 607–08, 116 N.W.2d 234, 242 (1962).

Frey and Kouf had argued and exchanged verbal abuse on previous occasions with no resulting physical encounters. Several witnesses testified there was no indication any physical altercation was about to take place. Kouf himself testified Frey did not, at any time, threaten him with physical harm. Kouf is entitled to no better version of the facts than that to which he testified. *See Trammell v. Prairie States Ins. Co.,* 473 N.W.2d 460, 463 (S.D.1991); *Waddell v. Dewey Cty. Bank,* 471 N.W.2d 591, 595 n. 3 (S.D.1991); *Heer v. State,* 432 N.W.2d 559, 567 (S.D.1988) (citing cases); *Drier v. Perfection, Inc.,* 259 N.W.2d 496, 508 (S.D. 1977).

■ "[T]he duty to exercise ordinary care to avoid the consequences of another's negligence does not arise until the negligence is apparent or the circumstances are such that an ordinarily prudent person would apprehend its existence." 65A

C.J.S. *Negligence* § 119, at 49 (1966). In other words, failure to look out for danger when there is no reason to apprehend any is not contributory negligence. *Johnson v. Chicago & N.W. Ry. Co.,* 71 S.D. 132, 22 N.W.2d 725, 730 (1946); *Wiggins v. Pay's Art Store,* 47 S.D. 443, 199 N.W. 122, 124 (1924). *See also Berg v. Sukup Mfg. Co.,* 355 N.W.2d 833, 835 (S.D.1984) (reasonableness of plaintiff's conduct refers to whether plaintiff had a reasonable opportunity to elect whether or not to subject himself to danger); *Miller v. Baken Park, Inc.,* 84 S.D. 624, 175 N.W.2d 605, 610–11, *modified on other grounds,* 85 S.D. 133, 178 N.W.2d 560 (1970). Frey had no reason to anticipate Kouf's irrational act. For these reasons, the trial court should not have instructed on contributory/comparative negligence. *Cf. Frazier,* 334 N.W.2d at 869–70 (evidence presented that plaintiff engaged in rough game).

Because the trial court gave an erroneous jury instruction which prejudiced Frey's case, we reverse and remand for a new trial.

MILLER, C.J., and, HENDERSON, SABERS and AMUNDSON, JJ., concur.