#24366-a-TUCKER, Circuit Judge
**2007 SD 107**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

| | |
|---|---|
| STATE FARM FIRE & CASUALTY COMPANY, | Plaintiff and Appellee, |
| v. | |
| THOMAS G. HARBERT, | Defendant and Appellant, |
| and | |
| DAVID M. KALT | Defendant. |

* * * *

APPEAL FROM THE CIRCUIT COURT
OF THE FIFTH JUDICIAL CIRCUIT
BROWN COUNTY, SOUTH DAKOTA
* * * *

HONORABLE JACK R. VON WALD
Judge

* * * *

| | |
|---|---|
| SUSAN M. SABERS and WILLIAM P. FULLER of Fuller & Sabers, LLP Sioux Falls, South Dakota | Attorneys for plaintiff and appellee. |
| LEE SCHOENBECK of Schoenbeck Law Office Watertown, South Dakota | Attorney for defendant and appellant. |

* * * *
ARGUED
APRIL 24, 2007

OPINION FILED 10/24/07

#24366

TUCKER, Circuit Judge

[¶1.]     State Farm Fire & Casualty (State Farm) brought this declaratory judgment action to determine if coverage or a duty to defend existed in an underlying action.  In that case David Kalt (Kalt) brought suit against Thomas Harbert (Harbert) for alienation of the affections of his former spouse, Peggy Kalt (Peggy).  Harbert sought personal liability coverage on the underlying action from State Farm under his personal liability umbrella policy.  The trial court granted summary judgment in favor of State Farm, finding no coverage and, thereby, no duty to defend.  Harbert appeals.

[¶2.]     We affirm, finding (1) an invasion of privacy claim derived from conduct leading to the dissolution of a marriage is more properly considered an alienation of affections claim; (2) alienation of affections is an intentional tort, falling within State Farm's intentional tort exclusion in the policy; and, (3) insuring an alienation of affections cause of action for an insured is contrary to the public policy of this State.

FACTS AND PROCEDURE

[¶3.]     Kalt and Peggy were married on February 14, 1976.  In May 2000 Peggy was hired as clinic manager for the Aberdeen Association of Orthopedic Surgeons.  At the clinic Peggy managed the practice of three physicians, one of whom was Harbert.  In 2001 Harbert and Peggy began engaging in an extra-marital affair while Peggy was married to Kalt.  Upon discovering the affair, Kalt filed for divorce against Peggy and initiated the underlying civil action against Harbert alleging alienation of affections.

[¶4.]      At the time of the commencement of the underlying action, Harbert was insured by a policy from State Farm.[1]  Harbert tendered the lawsuit to State Farm, asserting that State Farm must defend and indemnify Harbert under his policy.  State Farm defended the underlying action pursuant to a reservation of rights and commenced a declaratory judgment action to determine if Harbert's policy provided a duty to defend and coverage.

[¶5.]      The policy's coverage for personal liability provides, "[i]f you are legally obligated to pay damages for a *loss*, we will pay your net loss minus the retained limit."  (emphasis in original).  The definition of "loss" appears in the policy endorsement, which supplements the parent policy.  "Loss" is defined as:

> 6. "Loss" means:
>
>> a. an accident, including injurious exposure to conditions, which results in *bodily injury* or *property damage* during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one *loss*; or
>>
>> b. the commission of an offense, or series of similar or related offenses, which result in *personal injury* during the policy period.

(emphasis in original).  The definition of "bodily injury" and the offenses causing "personal injury" are also found in the policy endorsement:

> 17. "bodily injury" means physical injury, sickness, disease, emotional distress or mental injury to a person. This includes required care, loss of services and death resulting therefrom.

---

1.    Harbert purchased a State Farm Fire & Casualty personal liability umbrella policy that became effective July 7, 2001. Kalt initiated the underlying action named Kalt v. Harbert on January 14, 2004.

9. "personal injury" means injury caused by one or more of the following offenses:

> a. false arrest, false imprisonment, wrongful eviction, wrongful detention, malicious prosecution;

> b. libel, slander, defamation of character or invasion of rights of privacy.

[¶6.]    The policy provides that when the asserted claim is covered by the policy, State Farm will defend the insured in the suit, and pay the expenses incurred, costs taxed, and pre- and post-judgment interest accrued.  However, the policy lists relevant exclusions to this coverage, including the intentional tort exclusion.  The intentional tort exclusion specifies that State Farm will not provide coverage:

> 2. for *bodily injury* or *property damage*:

> > a. which is either expected or intended by you; or

> > b. to any person or property which is the result of your willful and malicious act, no matter at whom the act was directed.

> 16. for *personal injury* when you act with specific intent to cause or harm injury.

(emphasis in original).

[¶7.]    State Farm and Harbert filed motions for summary judgment.  As a result, Kalt amended his initial complaint against Harbert in the underlying action to include a cause of action for invasion of rights of privacy.[2]  The amended complaint alleged Kalt had been "injured in his right to privacy in that, among

---

2.    Kalt's amended complaint added a claim entitled "violation of personal rights." Invasion of rights of privacy claim is specifically listed under the policy as a covered personal injury offense.

other things Defendant gained private and personal information about Plaintiff, his family, and his finances which has caused Plaintiff to suffer great distress of mind, body and estate and damages."

[¶8.] In support of his motion for summary judgment, Harbert argued coverage existed and State Farm had a duty to defend the underlying action pursuant to (1) the personal injury coverage as an invasion of rights of privacy offense; or (2) the bodily injury coverage provision as an "accident" resulting in bodily injury. State Farm argued that no coverage existed under the policy because of the intentional tort exclusion.

[¶9.] The trial court granted summary judgment in favor of State Farm, finding no coverage and, thereby, no duty to defend Kalt's suit against Harbert for alienation of affections and invasion of rights of privacy. Specifically, the trial court held that a claim for alienation of affections is an intentional tort under South Dakota law, and, as such, is not covered under the policy. In addition, the trial court found Kalt's invasion of privacy claim against Harbert was essentially a claim for alienation of affections.[3]

[¶10.] Harbert appeals from the trial court's order granting State Farm's motion for summary judgment. We review the following issues on appeal:

> Is Kalt's invasion of privacy claim, derived from conduct resulting in the dissolution of a marriage, more properly considered an alienation of affections claim?

---

3. The trial court concluded, "[T]here is no coverage under the 'personal injury' portion that would let you [Kalt] basically claim the same injuries for alienation of affections under a different name of invasion of rights to privacy."

> Does the alienation of affections claim fall within State Farm's intentional tort exclusion in the policy?[4]

> Does public policy of South Dakota preclude insurance coverage for the intentional tort of alienation of affections?

## STANDARD OF REVIEW

[¶11.] This matter is before the Court on appeal from a grant of summary judgment. Pursuant to South Dakota law, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." SDCL 15-6-56(c). All reasonable inferences drawn from the facts must be viewed in favor of the nonmoving party and reasonable doubts should be resolved against the moving party. Wilson v. Great Northern Ry. Co., 83 SD 207, 212, 157 NW2d 19, 21 (1968). The burden is placed on the moving party to show an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law. However, the party opposing a motion for summary judgment must be diligent in resisting the motion, and mere general allegations and denials which do not set forth specific facts will not prevent issuance of a judgment. Butler Machinery Co. v. Morris Const. Co., 2004 SD 81, ¶ 5, 682 NW2d 773, 776. Our task on appeal is to determine whether a genuine issue of material fact exists and whether the law was correctly applied in the lower court. Weatherwax v. Hiland Potato Chip Co., 372 NW2d 118, 120 (SD 1985); Ruple v. Weinaug, 328 NW2d 857, 859-60 (SD 1983).

---

4. This Court will examine coverage under Harbert's umbrella policy from State Farm. The parties agree Harbert's homeowner's policy from State Farm provides no coverage for the underlying claim and is not at issue.

ISSUE ONE

**[¶12.]** **Is Kalt's invasion of privacy claim, derived from conduct resulting in the dissolution of a marriage, more properly considered an alienation of affections claim?**

**[¶13.]** Harbert asserts State Farm has a duty to defend Kalt's action for invasion of rights of privacy because it is specifically covered within the policy's definition of "personal injury."[5] Harbert emphasizes that because "invasion of rights of privacy" is not defined in the policy, this Court should adopt a reasonable interpretation of the policy language which includes protection for claims that an insured violated protected marital interests. We find this argument unpersuasive.

**[¶14.]** In Pickering v. Pickering, 434 NW2d 758, 762 (SD 1989), this Court declined to recognize a "repackaged cause of action that already has been specifically pleaded." We refused as a matter of public policy to recognize actions for intentional infliction of emotional distress, fraud and deceit, negligent misrepresentation, and tortious interference with a marital contract when such claims were "predicated on conduct which leads to the dissolution of a marriage." *Id*. at 761. In *Pickering* we concluded that any wrong that occurred as a result of the defendant's alleged fraud and deceit in the context of a marriage is not one that can be redressed in a tort action because public policy would not be served by authorizing an award of damages under the circumstances. *Id*. at 761-62. By definition, a civil wrong is given a remedy in the judicial system as a "tort" action for damages. However, the judicial system cannot remedy all wrongs, particularly

---

5. The policy's definition of "personal injury" lists several covered intentional torts (called "offenses") which State Farm agrees to provide personal liability insurance coverage.

those wrongs which are beyond any effective legal remedy and practical administration of the law. *Id.* at 761. For example, wrongs such as "betrayal, brutal words, and heartless disregard of feelings of others" are in themselves outrageous conduct and "to attempt to correct such wrongs or give relief from their effects 'may do more damage than if the law leaves them alone.'" *Id.* at 761. The law of South Dakota provides a remedy for these types of claims in the form of an action against the paramour for alienation of affections. *Id.* In accordance with the public policy of South Dakota, any wrong which occurred as a result of the alleged privacy violation by Harbert in the context of Peggy and Kalt's marriage is not one that can be redressed in an action for invasion of rights of privacy.

[¶15.] By amending his complaint to include invasion of privacy, Kalt was, in essence, attempting to repackage his alienation of affections claim as an invasion of privacy claim to create insurance coverage for Harbert in the underlying action. The privacy claim stemmed from the same underlying injury as the claim for alienation of affections: allegedly the intentionally harmful, voluntary adulterous conduct leading to the dissolution of Kalt's marriage. Thus, it cannot be said that the privacy claim is separate or distinct from the alienation of affections claim. Kalt's initial complaint asserted a cause of action against Harbert for alienation of the affections of his former spouse, Peggy.[6] Under South Dakota law, Kalt's remedy

---

6. Kalt's initial complaint claimed, among other things, "The Defendant, intending to injure the Plaintiff and to deprive the Plaintiff of his wife and of his wife's aid, support, protection, comfort, society and fidelity toward the Plaintiff, wickedly, willfully, and maliciously sought to prejudice the mind of Peggy A. Kalt against the Plaintiff and to alienate her affection from the Plaintiff."

is an action for alienation of affections.

ISSUE TWO

**[¶16.]** **Does the alienation of affections claim fall within State Farm's intentional tort exclusion in the policy?**

**[¶17.]** The interpretation of a contract is a question of law. State Farm Mut. Auto Ins. Co. v. Vostad, 520 NW2d 273, 257 (SD 1994); Yarcheski v. Reiner, 2003 SD 108, ¶ 24, 669 NW2d 487, 495. "The existence of the rights and obligations of parties to an insurance contract are determined by the language of the contract, which must be construed according to the plain meaning of its terms." Bielger v. American Family Mutual Ins. Co., 2001 SD 13, ¶ 20, 621 NW2d 592, 598-599. Thus, in deciphering the language of the insurance contract, the court must employ a plain meaning approach. *Id.*

**[¶18.]** Under South Dakota law, a liability insurer's duty to defend extends to any third party claim asserted against an insured that arguably falls within the policy's coverages. If disputed, the issue of whether an insurer has a duty to defend is determined by the third party's complaint and "other evidence of record." North Star Mut. Ins. Co. v. Kneen, 484 NW2d 908, 912 (SD 1992). The insurer bears the burden of showing it has no duty to defend the insured. *Id.* This burden is satisfied when the insurer shows the claim "*clearly* falls outside of policy coverage." State Farm Mutual Auto. Ins. Co. v. Wertz, 540 NW2d 636, 638 (SD 1995) (emphasis in original). *See also* City of Fort Pierre v. United Fire & Cas. Co., 463 NW2d 845, 847 (SD 1990); Bayer v. Employers Reinsurance Corp., 383 NW2d 858, 861 (SD 1986); Hawkeye-Security Ins. Co. v. Clifford, 366 NW2d 489, 492 (SD 1985). If doubt exists as to whether the insured's claim falls within the policy coverage after

considering the complaint and record evidence, "such doubts must be resolved in favor of the insured." *City of Fort Pierre*, 463 NW2d at 847.

[¶19.] The policy issued by State Farm does not provide coverage for the underlying tort action of alienation of affections. Such an intentional tort claim falls within the intentional tort exclusion of the policy and releases State Farm from a duty to defend the underlying claim against Harbert.

[¶20.] Under the policy language, State Farm agreed to defend and indemnify Harbert where Harbert was legally obligated to pay for a "loss." A "loss" under the policy is defined as "an accident . . . which results in bodily injury."[7] The policy does not define the word "accident." The intentional tort exclusion provides that injuries "expected or intended by" Harbert, or injuries that were the "result of [Harbert's] willful and malicious acts" would not be covered. Kalt's initial complaint alleged Harbert intentionally injured Kalt and deprived him "of his wife and of his wife's aid, support, protection, comfort, society and fidelity," and "wickedly, willfully, and maliciously sought to prejudice the mind of Peggy A. Kalt" against Kalt and "to alienate her affections." State Farm asserts this alleged bodily injury[8] is excluded from coverage under the "expected or intended" injury exclusion and is not the result of an "accident." We agree.

---

7. Because we find Kalt's invasion of rights of privacy claim to be unavailable and without merit, the "personal injury" coverage analysis is not relevant and not at issue.

8. State Farm concedes that Kalt's complaint alleges conduct resulting in "bodily injury" under the definition in the policy.

[¶21.]     To determine whether Kalt's alleged bodily injury is the result of an "accident" under the policy, we must review the elements of the alienation of affections tort. There are discrepancies between early South Dakota Supreme Court decisions and those decided in recent years regarding the intent element of the alienation of affections tort. In the earlier decisions, "actual intent to alienate the affections of the spouse of another need not necessarily be shown if defendant's conduct is inherently wrong and tends to, and does, have that effect." Pearsall v. Colgan, 76 SD 241, 244, 76 NW2d 620, 621 (1956). *See also* McAlpin v. Baird, 40 SD 180, 166 NW 639, 640 (1918) (stating "[t]he allegation that the defendant debauched and carnally knew plaintiff's wife states a cause of action for damages. It is not necessary to allege an intent on defendant's part to injure the plaintiff."). These early cases required a relaxed general intent to alienate the affections of another's spouse. In addition, these cases required the defendant's conduct to "have been calculated from the outset" of the affair to cause the spouse's loss of affections for the plaintiff. Pankratz v. Pankratz, 401 NW2d 543, 548 (SD 1987).

[¶22.]     In contrast, under the modern decisions of this Court, specific intent to alienate one spouse's affections from the other spouse is required to sustain an action for alienation of affections. *See* Veeder v. Kennedy, 1999 SD 23, ¶ 39, n14, 589 NW2d 610, 619 (finding one who "purposefully alienates" one spouse's affections from the other spouse is liable for the tort of alienation of affections, and stating that "[n]ot only must the actor have caused a diminution of one spouse's affection for the other by acts, but the acts must have been done for the very purpose of accomplishing this result."); *Pankratz,* 401 NW2d at 549 (providing "[t]he acts

which lead to the loss of affection must be wrongful and intentional, calculated to entice the affections of one spouse away from the other" and stating "[*t*]*he gravamen of an action for alienation of affections is enticement.  It is based on an intentional tort, not negligence.*") (emphasis in original).

[¶23.]        Additionally, under the modern decisions of this Court, the specific intent to alienate affections is not required to be present "from the outset" of the affair.  *Veeder*, 1999 SD 23, at ¶ 38, n13, 589 NW2d at 619.  Rather, the specific intent to alienate one spouse's affections from the other spouse may develop at any point during the adulterous relationship.

[¶24.]        To clarify the elements of an alienation of affections action, we restate them here.  The elements of alienation of affections are:

> 1.     Wrongful conduct by the defendant with specific
>         intent to alienate one spouse's affections from the
>         other spouse (such intent may develop at any point
>         during the adulterous relationship);
>
> 2.     Loss of affection or consortium; and
>
> 3.     A causal connection between such intentional
>         conduct and loss.

*Pickering*, 434 NW2d at 762-763; *Veeder*, 1999 SD 23 at ¶ 39, n14, 589 NW2d at 619.

[¶25.]        The elements of this alienation of affections action fall within the intentional tort exclusion of the policy.  Therefore, there is no coverage and no duty to defend.

[¶26.]        After examining the elements of alienation of affections, we also consider the history of decisions from this Court construing unintended results of

intentional torts in insurance policies. A line of divided decisions from this Court has created confusion in determining policy coverage for intentional tort exclusions. Some decisions have found, based on the public policy of this State, that intentional torts and their resulting injuries are not "accidents" under insurance policies, thereby releasing the insurer's duty to defend the intentional tort claims asserted against its insured.[9] Other decisions have found there may be a duty for an insurer to defend its insured when the insured is being sued for an intentional tort that results in an unintended injury.[10]

[¶27.] The division of our recent decisions on this issue was recognized by the Eighth Circuit Court of Appeals in *Pins,* 476 F3d 581 (8th Cir 2007).[11] There, the

---

9. *See* Klatt v. Continental Ins. Co., 409 NW2d 366 (SD 1987) (finding that the intended consequences of an intentional act are not an "accident" for purposes of insurance contract interpretation); Taylor v. Imperial Cas. & Indem. Co., 82 SD 298, 144 NW2d 856 (1966); Corner Const. Co. v. United States Fidelity, 2002 SD 5, 638 NW2d 887; *See also* Pins v. State Farm Fire and Casualty Company, 476 F3d 581 (8th Cir 2007); SDCL § 53-9-3 (providing that "[a]ll contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud or willful injury to the person or property of another or from violation of law whether willful or negligent are against the policy of the law.").

10. *See* Stoebner v. SD Farm Bureau Mut. Ins. Co., 1999 SD 106, ¶ 12, 598 NW2d 557, 559 (providing that "[m]ost, if not all, negligently inflicted injuries or damages result from intentional acts of some kind, but coverage still exists under normal [insurance] policy provisions if there was no intention to cause, by the commission of the acts, the resulting injury or damages."); *Wertz*, 540 NW2d at 642.

11. While the instant case was pending appeal, *Pins* overruled the district court, which concluded State Farm had a duty to defend Pins' alienation of affections claim because Pins could have been found liable for alienation of affections even if he did not intend to break up a marriage. *Pins*, 476 F3d at 584. According to the Court of Appeals, applying South Dakota law, the district court incorrectly relied upon the principle that there may be a duty to defend when an intentional tort results in an unintended injury. *Id.*

Eighth Circuit stated,

> In recent years, opinions in badly-divided decisions of the Supreme Court of South Dakota have declared that there may be a duty to defend when an intentional tort results in an unintended injury, such as when a punch in the face results in a broken ankle. . . . We are less confident than the district court that a majority of the Supreme Court of South Dakota has adopted this principle.

*Pins*, 476 F3d at 583-84.

[¶28.] In Tri-State Co. of Minnesota v. Bollinger, 476 NW2d 697 (SD 1991), a homeowner punched a guest in the face and an altercation ensued between the two parties. As a result, the guest suffered a broken ankle and brought a personal injury suit against the homeowner for assault and battery. The homeowner sought coverage under his homeowner's insurance policy and tendered defense to his insurer. The homeowner's insurer declined to defend on grounds that it had no duty to defend or indemnify insured because such intentional conduct was excluded from the policy. However, this Court found that the insurer had a duty to defend stating that it is not the *intentional act* of the insured which must be expected or intended for the intentional act exclusion to apply; instead, a court must consider whether the *resulting injuries* were intended. *Id.* at 701. This Court noted that breaking an ankle was not ordinarily an intended consequence of a fist fight inside a home. However, it was a question for a jury to sort out under proper instructions.

[¶29.] While one could argue that bodily injury of the type in *Bollinger* is an expected consequence of being punched, that case can be distinguished from an alienation of affections claim. Here, as in all alienation of affections claims, the

gravamen of the tort is the intent to achieve the *result*; specifically, the intent to cause alienation of the spouse's affections away from the other spouse.

[¶30.] Harbert attempts to use the *Bollinger* rationale to support his argument for coverage, asserting that he intended the act, but not the result. He emphasizes that although he intended to have sexual relations with Peggy, he did not intend to alienate her affections from her husband, Kalt, and thus coverage exists under the policy. We disagree with this reasoning. We find the *Bollinger* rationale does not apply, because the tort of alienation of affections requires specific intent to cause the resulting injury of alienating a spouse's affections away from the other spouse.

[¶31.] Accordingly, an underlying action for alienation of affections cannot be supported by facts that fit within the definition of an "accident" of an insurance policy, because an alienation claim necessarily requires the specific intent to entice the affections of one spouse away from the other.[12] In the underlying action, Kalt must prove that Harbert "expected or intended" a "loss" to Kalt from his adulterous conduct, rendering such "loss" outside the scope of an "accident." At the heart of an alienation of affections tort is the specific intent to alienate the affections of one spouse away from the other spouse. Therefore, the resulting injury is always "expected or intended." As a result, State Farm has no duty to defend Kalt's alienation of affections claim because it falls within the intentional tort exclusion as an expected or intended loss and is, therefore, not covered by Harbert's policy.

_____

12. *See Pins*, 476 F3d 581 (8th Cir 2007) (providing that because alienation of affections is an intentional tort requiring the insured to intend to cause specific injuries, no coverage existed under the policy).

ISSUE THREE

[¶32.] **Does the public policy of South Dakota preclude insurance coverage for the intentional tort of alienation of affections?**

[¶33.] As a general rule, public policy prohibits extending insurance coverage to individuals who commit intentional tortious conduct. State Farm Mut. Auto. Ins. Co. v. Kostaneski, 2004 SD 114, ¶ 22, 688 NW2d 410, 415. *See also Wertz*, 540 NW2d at 640 (stating that "[p]ublic policy prohibits extending insurance coverage to an individual who intentionally harms others."); *City of Fort Pierre*, 463 NW2d at 848-49 (quoting Ambassador Ins. Co. v. Montes, 76 NJ 477, 483, 388 A2d 603, 606 (1978) which states "[w]ere a person able to insure himself against economic consequences of his intentional wrongdoing, the deterrence attributable to financial responsibility would be missing."); *Bollinger,* 476 NW2d 697 (SD 1991) (stating that if insured, through intentional acts, consciously controls risks covered by the policy, the central concept of insurance is violated); SDCL 53-9-3 (providing that contracts which have the purpose of exempting anyone from responsibility for his own fraud, willful injury, or violation of law are against public policy).

[¶34.] Under South Dakota law, "public policy prohibits extending insurance coverage to an individual who intentionally harms others." *Wertz*, 540 NW2d at 640 (holding a driver who intentionally drives a car into truck with intention of injuring passenger is not allowed to inflict deliberate harm with financial impunity). As mentioned earlier, this principle was examined by the Eighth Circuit Court of Appeals in *Pins*, 476 F3d 581 (8th Cir 2007). There, the court found no insurance coverage for the intentional tort of alienation of affections under South Dakota law. The Eighth Circuit ruled in line with South Dakota's public policy and found that

because alienation of affections is an intentional tort requiring the insured to intend to cause specific injuries, no coverage existed under the policy.

[¶35.] Pursuant to this State's public policy, an individual is not allowed to impute financial responsibility to his insurance company for his own intentional torts. Such responsibility stays with the insured. Here, Harbert allegedly committed a wrong by enticing Peggy's affections away from Kalt. Harbert is attempting to shift responsibility for these actions to his insurer, State Farm. The alienation of affections is conduct that should not be encouraged by the protection of financial impunity. To permit such "affair insurance" would defeat the purpose of punishing and deterring individuals for their own tortious acts. In accordance, we hold that insuring the tort of alienation of affections is contrary to South Dakota public policy.

[¶36.] Affirmed.

[¶37.] GILBERTSON, Chief Justice, and KONENKAMP, ZINTER and MEIERHENRY, Justices, concur.

[¶38.] TUCKER, Circuit Judge, for SABERS, Justice, disqualified.