#26083-rev & rem-JKK

**2012 S.D. 33**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

DOUGLAS A. RUMPCA,                    Plaintiff and Appellant,

    v.

GLENN A. BRENNER,                    Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE ROBERT A. MILLER
Retired Justice

* * * *

JOHN K. NOONEY
ROBERT J. GALBRAITH of
Nooney, Solay & Van Norman, LLP
Rapid City, South Dakota                    Attorneys for plaintiff
                                              and appellant.

MICHAEL M. HICKEY
SARAH BARON HOUY of
Bangs, McCullen, Butler, Foye
 & Simmons, LLP
Rapid City, South Dakota                    Attorneys for defendant
                                              and appellee.

* * * *

ARGUED ON JANUARY 10, 2012

OPINION FILED **05/02/12**

#26083

KONENKAMP, Justice

[¶1.]     In this alienation of affections suit, the circuit court granted defendant's motion for summary judgment, declaring that there were no affections to alienate.  Because the record indicates genuine issues of material fact on this question, we reverse and remand for trial.

## Background

[¶2.]     Kellie and Doug Rumpca married on August 28, 1990.  They had two children during the marriage.  In 2002, the Rumpcas moved to Rapid City, South Dakota from Michigan.  They became acquainted with Glenn Brenner.  At the time, Brenner was married to Christina.  In 2005, however, the Brenners commenced divorce proceedings.  Around 2005 or 2006, Glenn Brenner and Kellie became friends.  The Brenners' daughter and the Rumpcas' daughter attended preschool together.  According to Brenner, "[a]s their children became friends, [he and Kellie] would sometimes see one another at extracurricular activities or carpool rides for the children."  They also began to talk on the phone regularly, with Brenner initiating most of the calls.  From April 2008 until Labor Day weekend in 2009, Kellie and Brenner averaged 13.5 hours on the phone each month.

[¶3.]     Brenner and Kellie also ran together ten to fifteen times over a three-year period.  In January 2009, they both participated in a marathon in Arizona.  Brenner picked Kellie up from the airport and took her to dinner and a movie.  Six months later, on July 24, 2009, Kellie and Brenner met at a hotel in Rapid City.  Brenner reserved the room.  He later testified that Kellie insisted on meeting, as she wanted to talk about her marital unhappiness.  They slept together in the same

bed, but Brenner maintains that although the two kissed, he told Kellie the relationship would not move beyond mere friendship "while she was married."

[¶4.] At some point before the 2009 Labor Day weekend, Kellie told Brenner that she filed for a divorce from Rumpca. On Labor Day weekend, Brenner took Kellie to Buffalo, Wyoming. There, the two had sexual intercourse. Kellie and Brenner spent another night together shortly after that. As it turned out, however, Kellie had not yet sued for divorce from Rumpca. She commenced divorce proceedings in October 2009.

[¶5.] In April 2010, Doug Rumpca brought suit against Brenner for alienation of affections. He alleged that Brenner wrongfully, willfully, intentionally, and maliciously interfered with his marital relationship with Kellie. As a result of such interference, Rumpca claimed that he suffered a loss of affection and consortium from Kellie. He moved the court to allow discovery on the issue of punitive damages. The court ruled that there was no reasonable basis to believe Brenner's conduct was willful, wanton, or malicious and denied Rumpca's discovery request.

[¶6.] Brenner moved for summary judgment, asserting that Kellie had no affections for Rumpca that Brenner could have alienated. Rumpca, in response, insisted that his marriage to Kellie was "well above average, exceptionally good," and that Kellie had affection for him before Brenner interfered. The court held a hearing, considered depositions and affidavits, and granted the motion. It concluded that the evidence indisputably showed that Kellie had no affections for Rumpca at the time of Brenner's conduct. Rumpca appeals, asserting that the court

erred when it granted summary judgment to Brenner and also erred in holding that Rumpca failed to make a prima facie showing for punitive damages.

## Analysis and Decision

[¶7.]    "The gravamen of an action for alienation of affections is enticement." *Pankratz v. Miller*, 401 N.W.2d 543, 549 (S.D. 1987) (quoting *Pedersen v. Jirsa*, 125 N.W.2d 38, 43 (Minn. 1963)) (emphasis omitted).  Under South Dakota law, the rights of personal relation forbid the "enticement of a wife from her husband[.]" SDCL 20-9-7(2).  To establish a claim, one must prove:

> 1. Wrongful conduct by the defendant with specific intent to alienate one spouse's affections from the other spouse (such intent may develop at any point during the adulterous relationship);
>
> 2. Loss of affection or consortium; and
>
> 3. A causal connection between such intentional conduct and loss.

*State Farm Fire & Cas. Co. v. Harbert*, 2007 S.D. 107, ¶ 24, 741 N.W.2d 228, 236 (citations omitted).  The circuit court granted summary judgment based solely on a lack of proof on element two: loss of affection.  Thus, we address only this element on appeal.  If there were no affections to alienate, there was no tort.  *See Veeder v. Kennedy*, 1999 S.D. 23, ¶ 27, 589 N.W.2d 610, 617 (citation omitted).

[¶8.]    Because the case was disposed of by summary judgment, we must address a legal question: did a genuine issue of material fact exist on whether Kellie had affections for Rumpca that Brenner could have alienated?  On review of summary judgment, "we decide only whether genuine issues of material fact exist and whether the law was correctly applied."  *Bordeaux v. Shannon Cnty. Sch.*, 2005

S.D. 117, ¶ 11, 707 N.W.2d 123, 126 (citations omitted). In these circumstances, we must look at all the evidence. *Fisher v. Kahler*, 2002 S.D. 30, ¶ 5, 641 N.W.2d 122, 124-25.

[¶9.] Kellie testified in her deposition that she had stopped loving her husband in the late 1990s, long before she began her relationship with Brenner. Kellie also testified that despite their attempts at marriage counseling, she remained unhappy and was not in love with Rumpca. Brenner also presented evidence attesting to the fact that Kellie was unhappy in the marriage. One witness, Chris Lenger, had a romantic relationship with Kellie in 2004. While Kellie and Lenger did not engage in sexual intercourse, the two talked on the phone regularly, kissed, and "made out." Other witnesses testified that Kellie was overly flirtatious with other men, despite being married. Thus, the circuit court concluded that Rumpca's argument that "Kellie was happy in her marriage until the time she met Brenner simply does not hold water and is overwhelmingly rebutted by Kellie herself."

[¶10.] Yet Kellie's testimony must be weighed with all the other evidence. Indeed, there were ample circumstantial facts to contradict Kellie. And we must view this evidence in a light most favorable to the nonmoving party, Rumpca. *See Luther v. City of Winner*, 2004 S.D. 1, ¶ 6, 674 N.W.2d 339, 343. In 2000, Kellie gave her husband a card on their tenth anniversary, writing, "These have been the best 10 years of my life. I'm so blessed to have you for my husband. I love you. Love your wife." One of the marriage counselors they saw, Colleen Waxler, noted in 2006 that "Kellie and Doug reported their relationship has improved greatly. They

are communicating effectively, expressing love to each other . . . . It has rekindled their feeling for each other and both are much happier." Another therapist, Pat Karn, reported that Kellie told her in 2008 that she still loved Rumpca. Sometime in 2007 or 2008, Kellie underwent breast augmentation surgery because she thought she would be more attractive to her husband. In 2009, the Rumpcas took a family vacation to Hawaii. Kellie later told a friend that this was going to be an annual trip. These facts are inconsistent with the loveless relationship Kellie depicted in her deposition.

[¶11.] From an examination of the entire record, we conclude that this conflicting evidence creates a genuine issue of material fact on whether Kellie had affection for her husband that Brenner could have alienated. These disagreements must be resolved by a jury. On the question of discovery for punitive damages purposes, we decline to rule at this time. Because the case is being remanded for trial, the circuit court will have another opportunity to consider punitive damages, and any such determination would be better reviewed after final judgment.

[¶12.] Reversed and remanded for trial.

[¶13.] GILBERTSON, Chief Justice, and ZINTER and SEVERSON, Justices, and MYREN, Circuit Court Judge, concur.

[¶14.] MYREN, Circuit Court Judge, sitting for WILBUR, Justice, disqualified.