#28441, #28453-aff in pt & rev in pt-SRJ
**2018 S.D. 80**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

JERRY W. CEDAR,                                        Plaintiff and Appellant,

    v.

BRUCE JOHNSON,                                        Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIFTH JUDICIAL CIRCUIT
BROWN COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE RICHARD A. SOMMERS
Judge

\* \* \* \*

ROBERT A. CHRISTENSON                Attorney for plaintiff
Sioux Falls, South Dakota                  and appellant.


THOMAS J. COGLEY of
Ronayne and Cogley, P.C.                   Attorneys for defendant
Aberdeen, South Dakota                    and appellee.


\* \* \* \*


ARGUED ON
OCTOBER 2, 2018
OPINION FILED **11/28/18**

#28441, #28453

JENSEN, Justice

[¶1.]      Jerry Cedar (Cedar) brought an action for alienation of affections against Bruce Johnson for causing the end of Cedar's marriage to Leslie Cedar (Leslie). At the close of Cedar's case-in-chief at trial, Johnson moved for judgment as a matter of law. The court granted the motion determining that Cedar failed to present evidence of his damages. Cedar appealed the dismissal of the action. Johnson filed a notice of review, arguing the circuit court erred in denying his other grounds for dismissal as a matter of law. We affirm in part, reverse in part, and remand.

### Facts and Procedural History

[¶2.]      Cedar and Leslie were married in Kansas in 2000. Early in the marriage the couple conceived their only child, N.C. In 2006, the family moved to Wisconsin to help care for Leslie's father. In 2007, Leslie began an online relationship over Facebook. Cedar discovered the relationship, and the couple briefly attended couple's counseling to rehabilitate their marriage.

[¶3.]      The couple moved to Frederick, South Dakota in September 2014. In April 2015, Leslie began working at the Titan Bar, a local restaurant owned by Johnson. Johnson had recently purchased the restaurant after moving to Frederick. Cedar occasionally worked for Johnson in the evenings as a cook. All the parties agree that the relationship between Johnson and Leslie was initially purely professional.

[¶4.]      Johnson lost his wife to cancer around May 2015. Cedar testified that at some point thereafter, Johnson and Leslie began frequently texting one another

during non-work hours. Cedar also testified that Johnson started paying special attention to Leslie and seemed eager to be around her. Cedar presented evidence that Johnson would bring Leslie coffee, donuts, soda, and gave her gifts. Cedar testified that he noticed that Leslie's affections for him began to change in August or September of 2015.

[¶5.]    Johnson testified that he initially had no romantic interest in Leslie, but began to develop feelings for her in the fall of 2015. Johnson and Leslie both testified that they did not express romantic feelings toward one another until late September 2015. Johnson and Leslie both testified that their relationship did not become sexual until November 2015 when they had sexual relations once in Johnson's restaurant office and once at his home. Johnson testified that he was initially hesitant to start a relationship with Leslie because she was married, but felt more comfortable doing so after learning Leslie felt no attachment to Cedar and considered her marriage to be over.

[¶6.]    Leslie told Cedar about her relationship with Johnson in November 2015. Cedar testified that Leslie told him at this time "that he (Johnson) worked his charm on her . . . and she fell for it." Cedar claimed that he told Leslie that he was willing to try to work things out if she would stop seeing Johnson and quit her job at the restaurant. Instead, Leslie moved out of the home on November 20, 2015, and moved in with Johnson. In April 2016, Cedar filed for divorce which was finalized on June 26, 2016.

[¶7.]    On February 4, 2016, Cedar filed this action for alienation of affections against Johnson seeking compensatory and punitive damages. After Cedar filed the

lawsuit, Leslie claimed that she also had a sexual relationship with another man, Archibald "Junior" Linthorne for approximately two weeks in September 2015. Leslie testified this was before her relationship with Johnson started.

[¶8.]        During those two weeks, Leslie testified she had sex with Junior twice, once at his home and once in an abandoned farmhouse in Frederick.[1] Johnson testified that he was unaware of the relationship between Leslie and Junior until approximately December 2015. Cedar testified that he did not believe that a sexual relationship occurred between Leslie and Junior. He claimed that Johnson and Leslie had fabricated the story with Junior to help Johnson's case. Cedar testified that he visited the abandoned farm house in 2016 after he learned of the alleged affair. During this visit, Cedar took pictures of the farm house showing it was difficult to enter and that the house was locked to prevent entry.

[¶9.]        On December 19, 2016, Johnson filed a motion for summary judgment arguing that no genuine issue of material fact existed to show that Johnson caused the alienation of Leslie's affections toward Cedar. The court denied the motion. Less than a week before trial, Johnson filed a motion to dismiss or in the alternative a motion for summary judgment. In this motion, Johnson argued that the case

---

1.        Junior testified by deposition prior to trial, and his testimony matched Leslie's testimony about the two of them having a sexual relationship two times during a two-week affair in the fall of 2015. Junior claimed that Leslie initiated the sexual relationship with him. Junior also testified in the deposition that Leslie was not happy in the marriage to Cedar and planned to leave the marriage after N.C. turned eighteen. Junior claimed that Leslie confided to him that she was scared of Cedar, and felt Cedar was controlling. Junior also testified that during this time, both Leslie and Johnson told him they had feelings toward one another. Junior's deposition was presented as a part of the summary judgment motions, but his testimony was not presented during Cedar's case-in-chief at trial.

should be dismissed because the claim for alienation of affections violated public policy and renewed the original basis for summary judgment.

[¶10.] A jury trial commenced on September 28, 2017. Cedar presented testimony from himself, Johnson, and Leslie. During his testimony, Cedar expressed that he and Leslie were loving and affectionate toward one another until Leslie's relationship with Johnson started. Cedar presented Facebook messages from Leslie and a photo from 2014 in support of his testimony. Cedar also presented evidence that on their fifteenth wedding anniversary in August 2015, Leslie posted a Facebook message with a picture of a ring stating that she would like an anniversary ring for their 20th anniversary. Cedar also presented an August 2015 Facebook message from Leslie stating, "[fifteenth] Anniversary to Jc…did ya think we would make it this far lol??? Here's to the next [fifteen]!!!." Cedar also testified that he and Leslie continued to be physically intimate, that they spent time together, and that they told one another they "loved each other" every night before falling to sleep. Leslie acknowledged she and Cedar occasionally had sex, but that she felt no feelings or affection toward Cedar since at least 2011. Leslie testified that she only intended to stay with Cedar until N.C. turned eighteen. She described the relationship between her and Cedar to be more like roommates than a marriage.

[¶11.] Cedar was asked during his testimony about the effect Leslie's separation had upon him. Cedar expressed that he missed being married to Leslie "every day and every night." He explained that he missed her love and affection, seeing her smile in the morning, and hearing her tell him she loved him every

night.  Cedar also discussed the things they did together during the marriage, such as raising livestock and taking trips.  Cedar explained that he had been "emotional" ever since he learned of her affair with Johnson and that losing Leslie had put him and their son "through heck."  Cedar also testified that he regretted having to raise N.C. in a broken home.  Cedar did not claim any pecuniary loss or testify to a specific dollar amount of damages.

[¶12.]	At the conclusion of Cedar's evidence, Johnson moved for judgment as a matter of law on several grounds.  The circuit court granted the motion on the question of damages reasoning that Cedar had failed to provide testimony as to the amount of his damages.  The court denied the other grounds for dismissal asserted by Johnson.  On October 4, 2017, the court entered an order dismissing the claim for alienation of affections.

[¶13.]	Cedar filed a notice of appeal and, by way of notice of review, Johnson requested review of the circuit court's denial of his other grounds for dismissal as a matter of law.  The parties' briefs raise the following issues:

1.	Whether the circuit court erred by determining as a matter of law that Cedar failed to present sufficient evidence as to the amount of his damages.

2.	Whether the circuit court erred in not granting Johnson's motion for judgment as a matter of law on liability and causation.

3.	Whether SDCL 20-9-7 violates public policy.

### Standard of Review

[¶14.]	Whether judgment as a matter of law was warranted is reviewed de novo.  *Center of Life Church v. Nelson*, 2018 S.D. 42, ¶ 18, 913 N.W.2d 105, 110.  For

our review, "we view the evidence in the light most favorable to the verdict or to the nonmoving party[,]" then we determine whether the evidence supports the motion, without assessing the validity of the evidence. *Id.* (citations omitted). "If sufficient evidence exists so that reasonable minds could differ, judgment as a matter of law is not appropriate." *Id.*

### Analysis & Decision

> 1.  *Whether the circuit court erred by determining as a matter of law that Cedar failed to present sufficient evidence of the amount of his damages.*

[¶15.]     The tort for alienation of affection emanates from SDCL 20-9-7. "The gravamen of an action for alienation of affections is enticement." *Rumpca v. Brenner*, 2012 S.D. 33, ¶ 7, 814 N.W.2d 128, 129 (quoting *Pankratz v. Miller*, 401 N.W.2d 543, 549 (S.D. 1987)). "[T]he rights of personal relation forbid the enticement of a wife from her husband[.]" *Id.* (quoting SDCL 20-9-7(2)). We have consistently held three elements must be proven to show alienation of affections:

> 1. Wrongful conduct of the defendant with specific intent to alienate one spouse's affections from the other spouse (such intent may develop at any point during the adulterous relationship);
> 2. Loss of affection or consortium; and
> 3. A causal connection between such conduct and loss.

*Id.*, 814 N.W.2d at 129-30.

[¶16.]     On the question of recoverable damages for alienation of affections, we have previously stated,

> The plaintiff . . . may recover for all direct and proximate losses occasioned by the tort, including loss of love and consortium, and he or she may recover for any physical pain, mental agony, lacerated feelings, wounded sensibilities, humiliation, blow to honor, hurt to family life, suspicion cast on offspring, etc.

*Morey v. Keller*, 77 S.D. 49, 85 N.W.2d 57, 59 (1957) (quoting 27 Am. Jur. Husband and Wife, § 543). "The loss of consortium is the actionable consequence of an action for alienation." *Jones v. Swanson*, 341 F.3d 723, 732 (8th Cir. 2003). "Consortium is a right growing out of the marital relationship" and includes the "right of either spouse to the society, companionship, conjugal affections, and assistance of the other". *Pankratz,* 401 N.W.2d at 546. "The courts recognize the impossibility of formulating a definite rule whereby the loss of affection or consortium in money can be determined and the jury must be allowed wide latitude." *Morey*, 85 N.W.2d at 60 (quoting 27 Am. Jur., Husband and wife, § 543).

[¶17.]		In granting the judgment as a matter of law for Cedar's failure to present evidence of his damages, the circuit court pointed to the proposed jury instructions submitted by both parties requiring Cedar to prove the nature and extent of his damages as one of the necessary elements to prove alienation of affections. The circuit court relied on *Veeder v. Kennedy*, 1999 S.D. 23, 589 N.W.2d 610, believing *Veeder* created a fourth element for alienation of affection requiring the plaintiff to show the nature and extent of their damages.[2] In dismissing Cedar's

---

2.	Contrary to the circuit court's conclusion, evidence of the nature and extent of a plaintiff's injury is not a specific element we have recognized for alienation of affections. *Veeder* approved a jury instruction that set out three elements for alienation of affections as follows: (1) wrongful conduct of the defendant; (2) loss of affection or consortium; and (3) a causal connection between such loss and conduct. *Veeder* affirmed that this instruction "does not deviate at all from what we have declared to be the elements of alienation of affections." 1999 S.D. 23, ¶ 37, 589 N.W.2d 610, 619. Further, the issue in *Veeder* was not about damages, but whether the instruction should have included language requiring the plaintiff to prove that he intended to entice plaintiff's spouse. Indeed, our cases after *Veeder* have continued to recognize three elements to prove alienation of affections. *See e.g. Richardson v. Richardson*,

(continued . . .)

claims, the circuit court concluded that while Cedar presented evidence of the nature of his damages, he failed to prove the extent of his damages. The court reasoned that to prove the extent of damages, Cedar was required to testify or present evidence of the dollar amount of damages.

[¶18.]     Generally, "[t]he amount of damages to be awarded is a factual issue to be determined by the trier of fact." *Roth v. Farner-Bocken Co.,* 2003 S.D. 80, ¶ 26, 667 N.W.2d 651, 662. "Damages must be reasonable and must be proved with reasonable certainty." *Lord v. Hy-Vee Food Stores,* 2006 S.D. 70, ¶ 31, 720 N.W.2d 443, 454. In explaining the reasonable certainty requirement for damages, we have stated that "[u]ncertainty as to the fact [of damages] is fatal to recovery, but uncertainty as to the measure or extent of the damages does not bar recovery." *Schmidt v. Wildcat Cave, Inc.,* 261 N.W.2d 114, 118 (S.D. 1977).[3] "Once the fact of

_____

(. . . continued)
> 2017 S.D. 92, ¶ 29 n.9, 906 N.W.2d 369, 379; *Rumpca,* 2012 S.D. 33, ¶ 7, 814 N.W.2d 128, 129-30; *State Farm Fire & Cas. Co. v. Harbert,* 2007 S.D. 107, ¶ 24, 741 N.W.2d 228, 236.

3.    *Schmidt* explained that the term "extent" of damages is not synonymous with the "amount" of damages. Reviewing an instruction on damages, this Court stated, "[t]he confusion arises from the use of the word 'extent' in Instruction No. 10 and in the American Jurisprudence text. 'Extent' as used was intended to refer to the scope or degree of the injury, not the amount, but in the context used, the word 'extent' could be understood to be synonymous with 'amount'." *Schmidt, Inc.,* 261 N.W.2d at 118-19. This Court further expounded that:

> In reviewing the authorities cited by the original Am. Jur. text as authority, we find none which uses the phrase "to an extent so definite and certain." All of the decisions clearly indicate that it is the fact, cause, or existence of damage that must be definite and certain. *See United States v. Dunn,* 268 U.S. 121, 45 S. Ct. 451, 69 L. Ed. 876; *County of Nelson v. Northcote,* 6 Dak. 378,

(continued . . .)

damages has been established, uncertainty over the *amount of damages* is not fatal to recovery." *Bailey v. Duling*, 2013 S.D. 15, ¶ 35, 827 N.W.2d 351, 363. (emphasis added).

[¶19.] Damages for alienation of affections encompass loss of consortium and damages "for any physical pain, mental agony, lacerated feelings, wounded sensibilities, humiliation, blow to honor, hurt to family life, [and] suspicion cast on offspring." These damages are noneconomic in nature.[4] We have recognized that determining the amount of noneconomic damages is "peculiarly a question for the jury." *Waldner v. Berglund*, 2008 S.D. 75, ¶ 14, 754 N.W.2d 832, 836. "The monetary value of the loss of consortium cannot be determined according to a definite rule" and we "have allowed the trier of fact 'wide latitude' in making its award". *Sander v. Geib, Elston, Frost Prof'l Ass'n*, 506 N.W.2d 107, 119 (S.D. 1993). Similarly, damages for pain and suffering, mental anguish, and emotional distress "do not compensate a plaintiff for a known monetary loss which has been experienced or is likely to be experienced. Thus, there is no way to quantifiably measure the amount that a trier of fact should award in dollars." *Lenards v.*

---

(. . . continued)

> 43 N.W. 897, 6 L.R.A. 230; *Dawe v. Morris*, 149 Mass. 188, 21 N.E. 313, 4 L.R.A. 158, 14 Am. St. Rpts. 404; *Wellington v. Small*, 3 Cushing (Mass.) 145, 50 Am. Dec. 719; *Russell v. Industrial Transp. Co.*, 113 Tex. 441, 251 S.W. 1034; 258 S.W. 462; 51 A.L.R. 1.

*Id.* at 118 n.9.

4. Our cases have not addressed whether a plaintiff may recover economic or pecuniary damages in an alienation of affections claim. Since Cedar only presented evidence of noneconomic damages, we limit our discussion to those damages.

*DeBoer*, 2015 S.D. 49, ¶ 13, 865 N.W.2d 867, 871 (quoting *Bakker v. Irvine*, 519 N.W.2d 41, 48 (S.D. 1994)); *see also*, *Hayes v. Northern Hills General Hosp.*, 1999 S.D. 28, ¶ 42, 590 N.W.2d 243, 252 (holding evidence of stress, humiliation, or mental anguish is enough for the issue of damages for emotional distress to go before a jury on a claim for intentional infliction of emotional distress).

[¶20.]        Other jurisdictions in alienation of affections claims have not required a monetary figure to be presented to a jury. *See Fitch v. Valentine*, 959 So. 2d 1012, 1029 (Miss. 2007) (holding evidence that plaintiff lost his house, custody of his child, and the loss of his marriage and other noneconomic damages was sufficient for the jury to establish the loss suffered); *Nelson v. Jacobsen*, 669 P.2d 1207, 1217 (Utah 1983) (holding recovery for alienation of affections cannot be denied when the amount of that injury or loss is difficulty to determine and jury instructions and remittitur help regulate jury awards in such cases).

[¶21.]        Cedar testified that he wanted to be married to Leslie and missed her love and companionship. He further explained to the jury that he had suffered every day since the marriage ended and felt remorse for having to raise N.C. in a broken home. While the damage testimony was limited, there was sufficient evidence to submit the issue to the jury. Therefore, we reverse the circuit court's entry of judgment as a matter of law on damages.

> 2.    *Whether the circuit court erred in not granting Johnson's motion for judgment as a matter of law on liability and causation.*

[¶22.]        Johnson argues the circuit court erred in denying his motion for judgment as a matter of law because there was no evidence to show that he had the specific intent to alienate Leslie's affections or that he caused Leslie's alienated

affections. Cedar claims that the circuit court properly determined that questions of fact existed for the jury on these issues.

[¶23.] On a claim for alienation of affections, the plaintiff must show the defendant's wrongful conduct was performed with the specific intent to alienate one spouse's affections from the other spouse. *Richardson*, 2017 S.D. 92, ¶ 29 n.9, 906 N.W.2d 369, 380 n.9; *Harbert*, 2007 S.D. 107, ¶ 22, 741 N.W.2d at 235; *Veeder*, 1999 S.D. 23, ¶ 39 n.14, 589 N.W.2d at 619 n.14; *Pankratz*, 401 N.W.2d at 549. The plaintiff must also prove a causal connection between the wrongful conduct and the loss. *Veeder*, 1999 S.D. 23, ¶ 14, 589 N.W.2d at 615. So that "if there are no affections to alienate, there is no cause of action." *Id.* ¶ 27, 589 N.W.2d at 617.

[¶24.] In addressing the specific intent element, this Court stated in *Pankratz*:

> The acts must have been done for the very purpose of accomplishing this result. It is not enough that [defendant] should have known that continuing the affair might contribute to the diminution of [wife's] affections, where her affections for [husband] were alienated *before* she initiated the relationship with [defendant].

401 N.W.2d at 548. Although the tort of alienation of affections requires specific intent, we clarified in *Harbert* that this intent may develop any time during the relationship:

> Additionally, under the modern decisions of this Court, the specific intent to alienate affections is not required to be present "from the outset" of the affair. Rather, the specific intent to alienate one spouse's affections from the other spouse may develop at any point during the adulterous relationship.

2007 S.D. 107, ¶ 23, 741 N.W.2d at 235 (internal citations omitted).

[¶25.] Cedar claims that evidence of the frequent text messages[5] between Johnson and Leslie, Johnson's special treatment of Leslie, and the admitted sexual relationship between the two of them just before Leslie left the marriage created a question for the jury of whether Johnson intentionally alienated Leslie's affections. Cedar also points to Leslie's comment to him "that he (Johnson) worked his charm on her . . . she fell for it" as evidence of Johnson's intent.

[¶26.] Johnson argues that both the intent to alienate and causation are negated by Leslie telling him she did not have affection for Cedar, as well as her testimony that she did not have feelings for Cedar. Although Leslie testified that she did not have affection for Cedar, she admitted her feelings for Cedar were complicated and that she was still confused about how she felt for Cedar. Cedar presented evidence that he and Leslie still showed love and affection for one another during this time and that Leslie reaffirmed her commitment to the marriage on their fifteenth anniversary, just a few months before she left the marriage. In *Rumpca*, this Court reversed a circuit court's order granting summary judgment for a defendant in an alienation of affections case where there was some evidence of love and affection in the marriage. 2012 S.D. 33, ¶ 9, 814 N.W.2d at 130. This Court's decision was made notwithstanding testimony from the wife that she had stopped loving husband several years before and engaged in an inappropriate relationship with another man before the defendant. *Id.*

---

5. Leslie testified that the text messages on her phone were provided to Cedar in discovery. However, none of the contents of the messages were introduced into evidence

[¶27.]     Johnson also claims that causation was also lacking because of Leslie's testimony about her sexual relationship with Junior shortly before starting the relationship with Johnson.  Cedar disputed that the affair took place, but Johnson counters that Leslie and Junior both admitted the affair occurred and Cedar had no actual knowledge whether the affair took place.  An admission by a party admitting a fact to be true may dispense with required evidentiary proof.  *Tunender v. Minnaert*, 1997 S.D. 62, ¶ 21, 563 N.W.2d 849, 853.  However, neither Leslie nor Junior are parties to this action.  Accordingly, the question of witness credibility is generally one for the jury.  *State v. Buchholtz*, 2013 S.D. 96, ¶¶ 24, 28, 841 N.W.2d 449, 457.

[¶28.]     On a motion for judgment as a matter of law, the circuit court must consider the evidence most favorable to the nonmoving party and "must indulge all legitimate inferences therefrom in his favor."  *Osman v. Karlen & Assocs.*, 2008 S.D. 16, ¶ 14, 746 N.W.2d 437, 442.  Based upon the evidence, a reasonable jury could infer that Johnson engaged in intentional and wrongful conduct to alienate Leslie's affections for Cedar.  Likewise, the question of causation also presented questions of fact for the jury.

[¶29.]     The circuit court did not err in denying the motion for judgment as a matter of law as to specific intent and causation.

   3.  *Whether SDCL 20-9-7 violates public policy.*

[¶30.]     Johnson argues that the tort of alienation of affections has become anachronistic from contemporary societal norms because it arose from the notion that a husband has a property right in his wife and is entitled to compensation for

her loss. He argues that such an idea violates public policy in this State. Johnson's arguments are nearly identical to those rejected in *Veeder*.

[¶31.] The concept that a spouse may claim consortium damages for harm caused to the marital relationship by the wrongful actions of another is firmly entrenched in our law and is a right exclusively "growing out of the marriage relationship". *Zoss v. Dakota Truck Underwriters,* 1999 S.D. 37, ¶ 13, 590 N.W.2d 911, 914. Further, our cases have long emphasized *"the right of either spouse"* to make a claim for loss of "society, companionship, conjugal affections and assistance of the other" in an alienation of affections action. *Morey*, 85 N.W.2d at 58 (emphasis added).

[¶32.] While the tort for alienation of affections in South Dakota is born from the common law, the claim emanates into state law through SDCL 20-9-7.[6] *Veeder*, 1999 S.D. 23, ¶¶ 11, 22-23, 589 N.W.2d at 614, 616. Since the tort is an expression of the policy in SDCL 20-9-7, it arises from legislative authority. As we explained in *Veeder*, the Legislature's sovereign power is expressed through statutes. 1999 S.D. 23, ¶ 23, 589 N.W.2d 610, 616 (citing SDCL 1-1-23). SDCL 1-1-24 states, "[i]n this state the rules of the common law . . . are in force except where they conflict with the sovereign power, expressed in the manner stated in SDCL 1-1-23." Therefore,

---

6.    SDCL 20-9-7 provides:
          The rights of personal relation forbid:

> (1) The abduction or enticement of a husband from his wife or of a parent from a child;
> (2) The abduction or enticement of a wife from her husband, of a child form a parent, or form a guardian entitled to its custody;
> (3) The seduction of a wife, daughter, or orphan sister;
> (4) The seduction of a husband, son, or orphan brother.

we are prevented from considering its validity unless it conflicts with legislative intent or presents a constitutional question. Johnson's arguments make no such claim.

[¶33.]     In rejecting the defendant's public policy arguments in *Veeder*, the Court stated, "we are compelled to leave the cause of action intact and instead defer to the legislature's ability to decide if there is a need for its elimination." Indeed, following our decision in *Veeder*, the Legislature saw fit to not only leave the cause of action in place, but even strengthen the underlying policy. In 2002, the Legislature reviewed SDCL 20-9-7 and included gender neutral language. 2002 S.D. Sess. Laws Ch. 97, § 1 (amending SDCL 20-9-7 to be gender neutral). Therefore, in keeping with our prior decisions, we decline to repudiate a cause of action for alienation of affections arising from SDCL 20-9-7. We affirm the circuit court's decision to deny the motion to dismiss.

[¶34.]     GILBERTSON, Chief Justice, and KERN and SALTER, Justices, concur.